215 N.J. Super. 540 (1987)
522 A.2d 473
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NEIL MORRISON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1986.
Decided March 9, 1987.
*541 Before Judges MICHELS, O'BRIEN and SKILLMAN.
*542 William P. Welaj, Designated Counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender of New Jersey, attorney; William P. Welaj, of counsel and on the brief).
Michael H. Weinstein, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Michael H. Weinstein, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from the denial of his petition for post-conviction relief. We affirm.
On April 24, 1980, defendant was convicted on Indictment # 222-78 of carnally abusing M.D., a 15 year old child, in violation of N.J.S.A. 2A:139-1, upon which he was sentenced on July 3, 1980 to a minimum of eight and a maximum of 10 years in the New Jersey State Prison. We affirmed that conviction on February 4, 1982. Defendant withdrew a pro se petition for post-conviction relief which he had filed on August 10, 1981. Thereafter the present petition for post-conviction relief was filed on April 19, 1982. After a hearing, it was denied by the trial judge, and this appeal is from that denial. We affirm.
The offense which is the subject matter of this conviction was committed on December 22, 1977. It occurred in a small back room of a seafood store operated by defendant and Mack Ross (Ross). The victim told the police she had left a pair of brown pantyhose at the crime scene. Thereafter a police officer went to the store, explained the purpose of his visit to Ross and, allegedly with Ross' consent,[1] searched the back room where he found and seized the pantyhose.
In a separate indictment # 369-78, defendant was charged with carnally abusing M.J., also a child 15 years of age, on *543 October 13, 1977.[2] After a bench trial on March 20, 1979, defendant was convicted on that indictment and sentenced on June 7, 1979.
Defendant retained private counsel to represent him on both indictments. Defendant was arraigned on Indictment # 222-78 on March 16, 1978, but his motion to suppress the pantyhose was not filed until May 8, 1979.[3] As was the practice in Passaic County, the motion was not heard until April 14, 1980, when the trial on Indictment # 222-78 was about to commence. By this time defendant was represented by the public defender. The State objected to the timeliness of the motion under R. 3:5-7.
In an effort to demonstrate good cause to enlarge the time to move to suppress beyond the required 30 days after the initial plea, pursuant to R. 3:5-7, the public defender asked Robert Goodman (Goodman), defendant's original private counsel, to explain to the court the reasons for his delay in filing the motion. Goodman testified that he was representing defendant on Indictment # 369-78, when Indictment # 222-78 was returned. According to Goodman, the defendant continually assured him that the charge in Indictment # 222-78 was not serious and he could explain it away. The State moved to consolidate the two cases for trial in January 1978, at which time, according to Goodman, he obtained discovery for the first time. Through this discovery, he learned that the pantyhose had been taken from the back room of the business establishment and that defendant's business partner Ross had allegedly *544 consented to the search.[4] Although Goodman had reservations about the potential success of a motion to suppress in view of Ross' alleged consent, he nevertheless filed the motion.[5]
Relying upon State v. Allaband, 134 N.J. Super. 353 (App. Div. 1975), the trial judge concluded that the neglect of an attorney in filing a motion to suppress does not constitute good cause to extend the time. He therefore denied the motion to suppress on April 16, 1980 as untimely. Trial commenced immediately thereafter and defendant was convicted. After denial of his motion for a new trial, defendant was sentenced on July 3, 1980. On his original appeal to this court, defendant did not seek review of the denial of his motion to suppress.
Initially, defendant's petition for post-conviction relief was denied by the trial judge by letter opinion of June 1, 1982. The judge found that petitioner's first two grounds, i.e., refusal to hear his motion to suppress as untimely and inadequacy of trial counsel, had not been raised on direct appeal and thus could not be raised in a petition for post-conviction relief. R. 3:22-4. However, the judge recognized that defendant's third ground, i.e., ineffective assistance of appellate counsel, obviously could not have been raised in the appeal and he therefore addressed it. The judge reviewed his findings of fact when he concluded that the motion to suppress was untimely, and good cause for enlargement had not been shown. The trial judge then decided that appellate counsel's decision not to raise denial of the *545 motion to suppress on appeal did not mandate a finding of ineffectiveness or incompetence.
Following a letter from defendant, the trial judge agreed that counsel should have been appointed to represent defendant in the presentation of his petition for post-conviction relief. Outside counsel was appointed by the public defender and a hearing was held. The trial judge again concluded that his original determination that good cause was not shown to enlarge the time for filing the motion to suppress was correct. He further concluded that failure to raise on appeal the denial of the suppression motion, as well as the ineffectiveness of Goodman in failing to file a timely motion, were fatal to the petition for post-conviction relief under R. 3:22-4. However, the trial judge left open "for whatever action the defendant wishes to take with respect to the third application as to the ineffectiveness of appellate counsel." Essentially, the trial judge concluded that he did not have sufficient evidence to pass on that particular issue. The judge then ruled:
I want an order to the effect that the application for post-conviction relief based on failure of the court to allow the suppression hearing and failure of the defendant to have effective counsel during the  prior to and during trial are denied. The court takes no action with respect to the third application based on ineffective assistance of appellate counsel in view of the defendant's failure to provide adequate information and documentation relative to the same.
It does not appear that this issue was pursued further by defendant before the trial judge, and thus it is not, strictly speaking, before us on this appeal. Nonetheless, the State argues that we should accept the initial conclusion of the trial judge that appellate counsel could make a reasonable professional judgment not to urge denial of the motion to suppress on appeal without ineffectively representing his client. We therefore choose to address that issue.
The State recognizes that in Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court held that due process guarantees a criminal defendant effective assistance of counsel on a first appeal as of right. However, *546 the Court did not set forth a standard to assess claims of ineffective appellate counsel. In the absence of other guidelines, we will apply the standard for assessing ineffective assistance of trial counsel claims established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of New Jersey in State v. Fritz, 105 N.J. 42 (1987). This was the standard used by the District Court in assessing a claim of ineffective assistance of appellate counsel in United States ex rel. Bradley v. Hartigan, 612 F. Supp. 795, 814 n. 4 (D.Ill. 1985), and the standard defendant urges us to use in his brief. We conclude that in applying the Strickland standard to assess a claim of ineffective assistance of appellate counsel, defendant must show not only that his attorney's representation fell below an objective standard, but also that he was prejudiced, i.e., but for counsel's unprofessional errors, the result would have been different. See Tsirizotakis v. LeFevre, 736 F.2d 57, 65 (2d Cir.1984), cert. den. 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984).
As noted, Goodman also represented defendant through his trial on Indictment # 369-78 upon which defendant was convicted. On appeal, defendant retained new counsel and alleged ineffective assistance of Goodman and error in the trial court's refusal to entertain a motion to suppress raised for the first time during trial. In an unreported opinion, we announced summarily that both claims had no merit and affirmed his conviction. The Supreme Court of New Jersey denied his petition for certification. State v. Morrison, 87 N.J. 368 (1981). Defendant's application for post-conviction relief raising the same issues was denied, from which he did not appeal.
Defendant then made application for a writ of habeas corpus to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 2254 as to his conviction on Indictment # 369-78. See Morrison v. Kimmelman, 579 F. Supp. 796 (D.N.J. 1984). The United States District Court found defendant's ineffective assistance claim to be meritorious, *547 but since defendant did not allege that the State had denied him an opportunity to litigate his fourth amendment claim fully and fairly, direct consideration of this claim on federal habeas review was barred by Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Yet, because defendant had been prejudiced by his counsel's ineffectiveness, the District Court issued a conditional writ of habeas corpus ordering Morrison's release unless New Jersey began a retrial within 90 days.
The Court of Appeals for the Third Circuit concluded that Stone v. Powell should not be extended to bar federal habeas consideration of Sixth Amendment claims based on counsel's alleged failure competently to litigate Fourth Amendment claims. See Morrison v. Kimmelman, 752 F.2d 918 (3d Cir.1985). The Court of Appeals determined that Goodman had been "grossly ineffective," 752 F.2d at 922, but vacated and remanded for the District Court to consider, under the standards set forth in Strickland v. Washington, supra (decided after the District Court filed its opinion), whether Morrison had been prejudiced by Goodman's incompetence.
Certiorari was granted by the United States Supreme Court, 474 U.S. ___, 106 S.Ct. 59, 88 L.Ed.2d 47 (1985). The Supreme Court affirmed the decision of the Third Circuit. Kimmelman v. Morrison, 477 U.S. ___, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In its opinion, the Court reviewed defendant's Sixth Amendment claim of ineffective assistance of counsel by failing to assert a Fourth Amendment claim. Referring to its opinion in Strickland v. Washington, the Court noted that:
In order to prevail the defendant must show both that counsel's representation fell below an objective standard of reasonableness, Strickland, 466 U.S. at 688, 80 L.Ed.2d 674, 104 S.Ct. 2052, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id., at 694, 80 L.Ed.2d 674, 104 S.Ct. 2052. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable *548 evidence in order to demonstrate actual prejudice. [Emphasis supplied.] [474 U.S. at ___, 106 S.Ct. at 2583, 91 L.Ed.2d at 319.]
The Court concluded that Stone v. Powell was not applicable.
The Supreme Court then reviewed the circumstances in light of the two-prong test of performance and prejudice for claims of ineffective assistance of counsel set forth in Strickland and concluded:
The trial record in this case clearly reveals that Morrison's attorney failed to file a timely suppression motion, not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce the bedsheet into evidence. Counsel was unapprised of the search and seizure because he had conducted no pretrial discovery. Counsel's failure to request discovery, again, was not based on `strategy,' but on counsel's mistaken beliefs that, the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense and that the victim's preferences would determine whether the State proceeded to trial after an indictment had been returned. [474 U.S. at ___, 106 S.Ct. at 2588, 91 L.Ed.2d at 325-326.]
The Court then found Goodman's conduct unreasonable, that is, contrary to prevailing professional norms. Id. at 326, 106 S.Ct. at 2588.
From the record in the instant case, we are told that Goodman's dereliction in not filing a timely motion to suppress in this case (Indictment # 222-78) was because he was busy preparing for trial of the other case (Indictment # 369-78) which is the subject matter of the decision by the United States Supreme Court. Under all the circumstances, we concluded the first prong of Strickland, i.e., lack of professional competence, has been clearly demonstrated in this case. Goodman's motion to suppress the pantyhose in this case was made after his motion to suppress the sheet, during the trial of Indictment # 369-78, notwithstanding that defendant was arraigned on Indictment # 222-78 before he was arraigned on Indictment # 369-78. Even after the denial of his untimely motion to suppress the sheet in Indictment # 369-78, Goodman waited another two months before moving to suppress the pantyhose in this case. Although it may be debatable whether appellate counsel was incompetent in failing to assert denial of the *549 motion to suppress, see Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant), his failure to urge the gross incompetence of Goodman (in failing to make a timely motion to suppress the pantyhose), indicates a sufficient lack of professional competence of appellate counsel to satisfy the first prong of the Strickland test.
Indictment # 369-78 had been remanded to the District Court by the Third Circuit for a determination of any prejudice that Morrison may have suffered under the standard of Strickland. The United States Supreme Court expressed its disagreement with the argument by the attorney general that a statement made by the judge at Morrison's bail hearing constituted a finding of fact that he had suffered no prejudice. The Court also found the record inadequate for it to make a determination of prejudice since no evidentiary hearing had been held as to the merits of defendant's Fourth Amendment claim. 474 U.S. ___, 106 S.Ct. 2590-91, 91 L.Ed.2d at 328-329.
For the purpose of reviewing defendant's argument in this case, we will accept his contention that the pantyhose should have been suppressed as the product of an illegal search.[6] We have reviewed the record of his conviction in that light to ascertain whether there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.[7]Strickland *550 v. Washington, 466 U.S. at 691-692, 104 S.Ct. at 2066-67. We conclude the verdict of the jury would have been the same. As the trial judge concluded in denying the petition for post-conviction relief:
... there was substantial credible evidence to support his conviction well beyond the pantyhose. This was a rape case which involved not only the testimony of the victim which is normally, normally the testimony that, that is given in a rape case but you had the very unusual circumstances in this case of having an eyewitness to the whole transaction  not maybe 100% of it but 95% and including the attitude, the drinking, the conversation that took place before the actual incident itself. You actually had an eyewitness to this matter. Secondly, you had an item of clothing for instance, the black blouse, which had hair on it which compared to the hair of the defendant. The black blouse had nothing to do with the search. It compared to the hair of the defendant. The next item, you had a number of other chemical analysis which supported the fact the defendant was there, the fact that he was a secreter, the comparisons of hair, the blood type was exactly the same as a result of him being a secreter. All of these factors were in the testimony too.
Let me tell you one other thing I think was extremely critical in the case is that aside from the arguments the defense made with respect to the lack of comparison of the hair on the pantyhose the defendant's primary argument was alibi and the defendant testified and Mack Ross testified that these girls were never employed at the Superior Crab premises. It was critical to their defense that these girls not be there. Allright? And in my judgment that testimony was annihilated by rebuttal testimony of I think 3 or 4 witnesses, including the parents of the girls and the boyfriend I think of one of them or a brother  I don't recall  Jerome somebody who came in and testified to many many occasions bringing the girls to the store, went into the store, the girls were working behind the counter. So there was much to indicate that the credibility of the defendant and Mr. Ross was substantially and seriously at issue and in doubt.
Frankly from a hindsight point of view I think that the elimination of the credibility of the defendant and Mack Ross by those people on rebuttal was an extremely critical point of the case and it pointed out that these men may not be telling the truth, so there was much more substantial evidence to support this *551 conviction beyond the pantyhose, and I say even though the pantyhose did corroborate the State's case, it also prevented  presented another element of doubt for the defense to hang on and Mr. Miller did hang on it. He's good and he, he made hay with it. A very important element.
We agree. Admission of the pantyhose had a dual effect. True, it supported the State's claim that the victim had been in the back room of defendant's store. However, as noted by the State, the pantyhose also supported the defense. The victim had stated she left the pantyhose behind at the scene because they were sticky. However, the evidence indicated there was no semen on the pantyhose and the pubic hair found on them did not match that of defendant's. Their admission also gave defense counsel the opportunity to attack the credibility of the victim as to her testimony about the pantyhose.
The defendant had to prove prejudice. It was not enough that defendant demonstrated that counsel's error had some conceivable effect on the outcome of the proceeding. Rather, defendant had to show there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Strickland, 104 S.Ct. at 2067-2068. As to appellate counsel, defendant was obliged to show that the appellate court would not only have been satisfied of Goodman's incompetence, but also that but for counsel's unprofessional errors, the result would have been different. We are satisfied that had appellate counsel raised Goodman's ineffective assistance on the first appeal, defendant could not have established that he was prejudiced by that lack of professional competence, as the trial judge concluded in denying the post-conviction relief, and as we now conclude. We agree with the trial judge that defendant did not meet the second prong of the Strickland test.
Affirmed.
NOTES
[1] Ross denied that he gave consent.
[2] The number of the indictment indicates it was returned after Indictment # 222-78, but the offense alleged was committed about two months prior to the offense charged in Indictment # 222-78. According to the assistant prosecutor, defendant was arraigned on Indictment # 222-78 on March 16, 1978 and on Indictment # 369-78 on March 30, 1978.
[3] Defendant did not move to suppress a sheet seized in his apartment in connection with the offense charged in Indictment # 369-78 until the trial of that indictment on March 20, 1979.
[4] At a hearing on defendant's petition for post conviction relief, the trial judge observed that Mack Ross, defendant's business partner, lived in the back room where the pantyhose was seized and was present during the search (although Ross claimed he stayed in front). On that same day, Ross told defendant that the police had been there. From this the judge concluded that defendant himself was immediately aware of the search, even if Goodman was not.
[5] See United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); State v. Douglas, 204 N.J. Super. 265, 275-281 (App.Div. 1985), cert. den. 102 N.J. 378 (1985); State v. Miller, 159 N.J. Super. 552, 555-559 (App.Div. 1978).
[6] We do not decide the merits of the suppression motion, but merely give defendant the benefit of the doubt in order to reach the issue of whether he was prejudiced by the unprofessional errors of his trial and appellate counsel.
[7] State v. Fritz, 105 N.J. 42 (1987), the alleged ineffectiveness of counsel was the failure to cross-examine due to a lack of knowledge of prior inconsistent testimony of a witness. Thus, it resulted in the omission of impeachment evidence. The matter was remanded to the trial court to determine whether there was reversible prejudice. In the instant case, however, the alleged ineffectiveness of counsel resulted in the admission of excludable evidence. Appellate review as to prejudice is more feasible where the alleged error resulted in the admission of evidence rather than the omission of evidence as in Fritz. Furthermore, remand for a hearing as to prejudice is unnecessary in this case because at the post-conviction relief hearing, the trial judge reviewed the potential for prejudice by the admission of the pantyhose as a result of the claimed ineffectiveness of counsel.