**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1301-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MALIK SHAKUR, a/k/a
JAMES WALKER, JAMEY
YOUNGBLOOD, JAMES A.
BASHAWN, MALIK SHAKWOR,
BASHAWN WALKER, JAMES A.
WALKER, and MALIK WALKER,

     Defendant-Appellant.

_____

Submitted April 9, 2018 – Decided   September 28, 2018

Before Judges Accurso, O'Connor and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. 09-12-3254.

Joseph E. Krakora, Public Defender, attorney for appellant (Durrell Wachtler Ciccia, Designated Counsel, on the brief).

Robert D. Laurino, Acting Essex County Prosecutor, attorney for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

O'CONNOR, J.A.D.

Defendant Malik Shakur appeals from an order denying the relief sought in his petition for post-conviction relief (PCR). For the reasons that follow, we affirm.

I

In December 2011, a jury convicted defendant of first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; five counts of second-degree possession of prescription legend drugs with intent to distribute, N.J.S.A. 2C:35-10.5(a); seven counts of third-degree possession of prescription legend drugs with intent to distribute, N.J.S.A. 2C:35-10.5(a); third-degree theft of movable property, N.J.S.A. 2C:20-3(a); and fourth-degree resisting arrest by engaging in flight, N.J.S.A. 2C:29-2(a). He was acquitted of four counts of weapons possession and six counts of possession of prescription legend drugs with intent to distribute.

2

The jury also convicted Shakur's co-defendants, James Waldren and Benjamin Fulton, of various offenses.[1] Another co-defendant, Orlando Arnold, pled guilty to certain charges before trial and, as part of his plea agreement, consented to testify at trial on behalf of the State.[2]

In February 2012, Shakur was sentenced to a term of life without parole for the conviction of first-degree armed robbery, pursuant to the Persistent Offender Accountability Act, N.J.S.A. 2C:43-7.1(a); the convictions for conspiracy to commit robbery and theft were merged into the armed robbery conviction for sentencing purposes. He received a concurrent ten-year term for the convictions of second-degree possession of prescription legend drugs with intent to distribute, a concurrent five-year term for the convictions of third-degree possession of prescription legend drugs with intent to distribute, and a concurrent eighteen-month term for resisting arrest.

---

[1] Waldren was found guilty of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1, and fourth-degree resisting arrest by engaging in flight, N.J.S.A. 2C:29-2(a).

Fulton was found guilty of second-degree eluding a law enforcement officer, N.J.S.A. 2C:29-2(b).

[2] Arnold pled guilty to first-degree armed robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:15-1; second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2; and two counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b).

3

Defendant filed a direct appeal.  We affirmed his convictions and sentence in an unpublished opinion.  State v. Shakur, No. A-4672-11 (App. Div. May 21, 2014).  The Supreme Court denied defendant's petition for certification.  State v. Shakur, 220 N.J. 98 (2014).

The evidence underlying defendant's convictions is set forth at length in our opinion; that which is pertinent to the issues on appeal is as follows. Eyewitnesses testified two males entered a pharmacy and, within seconds, donned "ninja" masks, leaving exposed only their eyes and mouth.  A third male, already masked, then entered the store.  Two of the men brandished handguns, yelling, "this is a hold-up!"  One went to the cash register, removed a check and all currency, and took $180 in cash from an employee's pocket. Another threw bottles of prescription medication into black plastic bags.

After the three men left, the employees called the police.  A customer who entered the store just after the three men left the pharmacy saw the three men get into a gray Jeep Cherokee and quickly drive off.  Police officers testified they spotted a gray Jeep Cherokee stuck in traffic within a block of the pharmacy just minutes after getting the report of the robbery.  The police got out of their vehicles and, with guns drawn, approached the Jeep and ordered the four occupants to "show your hands in the air."  The Jeep mounted a curb, got into a lane clear of traffic and sped off.

4

With sirens blaring and lights flashing, police cars chased the Jeep for several miles. At one point, the Jeep slowed and one of the occupants jumped out and ran. One of the officers "got a good look" at the occupant who fled from the car and broadcasted his description to other police units in surrounding areas. The occupant, later identified as co-defendant Waldren, was apprehended within an hour.

The police continued to chase the Jeep after Waldren jumped out. After crashing into two vehicles, the Jeep finally came to rest. One of the three remaining occupants, later identified as Shakur, ran from the vehicle but was apprehended a block away by an officer who subsequently identified Shakur in court. The two other occupants of the Jeep, Arnold and Fulton, were arrested at the crash site. The police determined Fulton drove the Jeep during the chase.

A ninja mask was found in Shakur's pocket when he was arrested. In the Jeep the police found a black plastic bag containing prescription bottles, affixed to which were labels that bore the pharmacy's name. The various prescription bottles contained, among other things, Percocet and OxyContin. Also found in the Jeep was a check made payable to the pharmacy, cash, a ninja mask, and two handguns located in the center console.

5

Consistent with his plea agreement, Arnold testified for the State. He acknowledged that he, Shakur, Waldren, and Fulton were in a Jeep on the day of the incident, but claimed to be unaware any of the others planned to commit a robbery when he entered the Jeep. When he, Waldren, and Shakur got out of the Jeep, Arnold was told they were going to rob the pharmacy of drugs and money. Arnold decided to participate and was given a mask. Arnold noted both Shakur and Waldren had guns.

Arnold testified that he and Shakur went into the pharmacy and then put on their masks. Thereafter, Waldren entered the store. Once inside, "guns were being pointed" and "directions were shouted." Arnold grabbed and threw drugs into a bag. When the three left, Arnold put the bag in the Jeep, and noticed two guns being placed into the center console. When they were only a block from the pharmacy, the police tried to obstruct them with their vehicles, but Fulton managed to maneuver around them. Fulton kept driving, despite being followed by the police with their sirens blaring. At one point, Waldren jumped out of the Jeep. Eventually the Jeep crashed and Arnold was pulled out of the vehicle by the police and arrested.

Fulton testified at trial. At the time of the robbery, he was working as a gypsy cab driver; specifically, he was driving a gray Jeep Cherokee. He claimed he had been hired by the co-defendants to drive them roundtrip from

6

Newark to West Orange and back. Fulton testified Waldren and Arnold were in the Jeep when driving to West Orange, but was uncertain whether the third passenger was Shakur. After getting to the pharmacy, Fulton parked and waited for his three passengers to return. When they got back into the Jeep, Arnold pointed a gun to his head and ordered him to start driving. Fulton claimed he drove under duress until the Jeep was disabled due to the crash.

Because relevant to some of the issues asserted on appeal, we note that a Wade[3] hearing was conducted to determine the admissibility of certain pharmacy employees' out-of-court identifications of Shakur and Waldren.[4] Evidence adduced at the Wade hearing revealed that five pharmacy employees viewed both defendants in a "one-on-one show-up," which took place in an "identification room" at a police station the same day as the robbery. Before the employees viewed these defendants, the employees were told "an arrest has been made" and that those arrested "may or may not be the individual that committed the crime. We would like you to take a look at them and if it is please let us know."

---

[3] United State v. Wade, 388 U.S. 218 (1967).

[4] By the time of the Wade hearing, Arnold had pled guilty, rendering moot the issue of whether the employees' out-of-court identifications of him were admissible. Fulton never entered the store and so was not observed by the pharmacy employees.

7

The employees were kept separate from each other before and during the viewing. Each defendant was viewed, one at a time, through a "one-way" glass; the employee could see a defendant but he could not see the employee. None of the defendants was handcuffed; although a detective was in the room when each defendant was viewed, the detective was unarmed. After an employee viewed a defendant, he was removed and the other brought in. Each employee gave a statement after viewing all three defendants. A police officer testified about each employee's comments after viewing Shakur and Waldren. Every employee indicated Shakur appeared to be one of the perpetrators, although the degree of certainty expressed by each varied.

At the conclusion of the Wade hearing, citing State v. Herrera,[5] 187 N.J. 493, 504, (2006), the trial judge determined that although one-on-one show-ups are inherently suggestive, the eyewitnesses' identifications were sufficiently reliable to be admissible. As previously noted, on direct appeal, we affirmed the trial court's findings. We further noted there was ample, if not overwhelming, evidence to support the jury's verdict against Shakur, as well as Waldren.

---

[5]  The holding in State v. Henderson, 208 N.J. 208 (2011), did not apply to this matter at the time the Wade hearing was conducted.

In April 2015, defendant filed his petition for PCR; his counsel subsequently submitted a brief on his behalf. On February 23, 2016, the PCR court entered an order denying defendant's request for PCR, setting forth its reasons in a written opinion. The issues defendant raised before the PCR court relevant to the issues on appeal and the court's findings were as follows.

Defendant was critical of both trial and appellate counsel. As for trial counsel, defendant alleged he was ineffective in the following respects. First, defendant claimed counsel failed to provide or review discovery with him. The PCR court disposed of the claim by finding defendant had access to discovery "prior to opening statements."

Second, defendant asserted trial counsel was ineffective because he did not file a motion to suppress evidence of two guns the police recovered from the Jeep. Defendant claimed such evidence was the product of a warrantless search and seizure. The PCR court found, without elaboration, that defendant was barred from asserting such issue under Rule 3:22-4(a), determining such issue could have been asserted on direct appeal. The court also observed defendant did not elucidate how the outcome would have been different had evidence of the guns been suppressed.

Third, defendant alleged trial counsel should have requested a Wade hearing to challenge the admissibility of Fulton's out-of-court identification of

9

defendant. The PCR court found such argument "meritless because [Fulton] was personally familiar with [defendant]."

Fourth, defendant contended that, during the <u>Wade</u> hearing, trial counsel failed to argue that some of the witnesses who viewed defendant at the show-up saw him in handcuffs before defendant entered the identification room. The PCR court found defendant filed but lost a <u>Wade</u> motion "with respect to seeing him handcuffed."

Fifth, defendant maintained trial counsel was ineffective for failing to file a motion to sever his trial from Fulton's, because Fulton made an out-of-court identification of Shakur. The PCR court found defendant was barred from asserting this claim pursuant to <u>Rule</u> 3:22-4(a), because it could have been raised on direct appeal.

Sixth, defendant claimed trial counsel should have requested the court to instruct the jury that a photograph taken of him after his arrest, which was admitted into evidence, was not a "mug shot." The PCR court found defendant could have challenged the court's failure to properly instruct the jury on direct appeal.

Defendant also maintained appellate counsel was ineffective. He contended appellate counsel was ineffective because he did not assert the trial court erred by failing to: (1) issue an adverse inference charge given one of

10

the investigating police officers destroyed his notes of the out-of-court identifications; (2) instruct the jury on accomplice liability for the lesser-included offense of theft; and (3) charge the jury with respect to the photograph the police took of Shakur following his arrest. The PCR court disposed of the three allegations against appellate counsel by summarily stating all were "meritless."

## II

On appeal, defendant reprises the arguments he asserted before the PCR court and added new ones, as noted below. We affirm the PCR court's determinations. In some instances, our reasons are different from those the PCR court found to justify denying the relief defendant sought. Nonetheless, an order will be affirmed on appeal if warranted, even if the decision to affirm is on grounds different from those relied on by the trial court. See Bryant v. City of Atl. City, 309 N.J. Super. 596, 629 (App. Div. 1998).

To establish an ineffective assistance of counsel claim, a defendant must satisfy the two-prong test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984) and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). First, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 52 (quoting Strickland, 466 U.S. at 687).

11

> To satisfy prong one, [a defendant] ha[s] to overcome a strong presumption that counsel exercised reasonable professional judgment and sound trial strategy in fulfilling his responsibilities. [I]f counsel makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is virtually unchallengeable. Mere dissatisfaction with a counsel's exercise of judgment is insufficient to warrant overturning a conviction.
>
> [State v. Nash, 212 N.J. 518, 542 (2013) (third alteration in original) (citations omitted).]

Second, a defendant must prove he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52). "If [a] defendant establishes one prong of the Strickland-Fritz standard, but not the other, his claim will be unsuccessful." State v. Parker, 212 N.J. 269, 280 (2012).

We apply the same standard to a defendant's claim of ineffective assistance by appellate counsel. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007) (citing State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987)). "To remedy the prejudice to [a] defendant resulting from the

12

ineffective assistance he received in his direct appeal, we . . . consider[] . . . the issues presented . . . from a denial of post[-]conviction relief as if they were being presented in a direct appeal." State v. Guzman, 313 N.J. Super. 363, 375 (App. Div. 1998) (citing Mayo v. Henderson, 13 F.3d 528, 537 (2d Cir. 1994)). However, "a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue that defendant requests on appeal." Gaither, 396 N.J. Super. at 515. "A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." Jones v. Barnes, 463 U.S. 745, 753 (1983).

We first address defendant's claims trial counsel was ineffective. Defendant asserts trial counsel failed to "investigate the whole case," including interviewing some of the State's witnesses, and failed to provide or review discovery with him. As for the latter issue, our review of the record reveals that, the day before the trial began, defendant told the court he had just received discovery from his attorney that day. Trial counsel admitted certain discovery had not been delivered to defendant until that day, but he also represented he had previously provided discovery to defendant.

Regardless, significantly, defendant does not state how counsel's failure to review or turn over discovery to him affected the outcome. In the same

13

vein, defendant does not does not identify the evidence counsel would have unearthed had he engaged in the investigation, including the interviewing of witnesses, defendant claims counsel failed to undertake. Thus, even if defendant met the first prong of the Strickland standard, there is no evidence he met the second.

The PCR court rejected defendant's claim trial counsel was ineffective because he failed to file a motion to suppress evidence of the guns recovered by the police just after the Jeep crashed. We agree with that finding. Defendant was acquitted of all weapons possession charges, making the fact counsel did not file a motion to suppress such evidence irrelevant.

Defendant complains counsel was ineffective because he did not request a Wade hearing to challenge the admissibility of Fulton's out-of-court identification of defendant. We reject this contention because, when Fulton testified at trial, he disavowed having any knowledge of defendant, and stated he could not say defendant was in his Jeep the day of the incident. Defendant did not cite to any portion of the record where another witness testified Fulton had identified defendant as one of the perpetrators. Further, even if there was evidence Fulton had identified Shakur as one of the perpetrators, Shakur has not shown how the outcome would have been different if such evidence had not been admitted. Defendant claims that, during the Wade hearing, trial

14

counsel failed to assert the eyewitnesses who viewed defendant at the show-up could have seen him in handcuffs before he entered the identification room. However, the transcript of the hearing reveals counsel cross-examined the State's witness on this very issue, questioning him whether any of the eyewitnesses could have seen any of the defendants in handcuffs either before or during the eyewitnesses' view of them in the identification room. The State's witness claimed it was not possible any eyewitness saw any defendant in handcuffs. In an effort to challenge the police officer's credibility, Shakur's attorney questioned the witness about the fact his police report did not mention defendants were not handcuffed while being viewed by the eyewitnesses. Therefore, we reject defendant's claim trial counsel failed to raise this particular issue during the Wade hearing.

Defendant argues trial counsel failed to file a motion to sever his trial from Fulton's. Defendant contends counsel should have done so because there was evidence Fulton identified him out-of-court. Defendant did not specify what that evidence was and, as we previously noted, at trial Fulton testified he did not know Shakur.

We note Shakur's counsel joined in a motion made by co-defendant Waldren to sever the trial from Fulton's, because Fulton was going to claim he was kidnapped by the defendant who forced him to drive the Jeep at gunpoint

15

after the robbery. Although Shakur and Waldren denied they forced Fulton to drive the Jeep, they contended Fulton's testimony was going to implicate them as accomplices. To avoid forcing their clients to testify in defense of Fulton's claim, counsel for Shakur and Waldren argued Fulton's trial had to be severed from theirs. The court denied the motion, finding Fulton's anticipated testimony insufficiently prejudicial to warrant severance. That ruling was not challenged on appeal.

Defendant's contends trial counsel was ineffective because he did not request the trial court to instruct the jury that the post-arrest photograph taken of him was not a "mug shot." Defendant does not specify how such instruction would have affected the outcome, not to mention there was nothing prejudicial about the fact the police photographed defendant after his arrest. Therefore, we reject this contention because defendant cannot show counsel's omission meets the second Strickland prong.

Defendant asserts, for the first time on appeal, that trial counsel failed to ask for a cross-racial identification charge. See State v. Cromedy, 158 N.J. 112 (1999). A cross-racial identification instruction must be given when "identification is a critical issue in a case, and an eyewitness' cross-racial identification is not corroborated by other evidence which gives it independent reliability." Id. at 132. On direct appeal, Shakur argued the court erred by

failing to give this charge. We rejected the argument, because the eyewitnesses' cross-racial identifications were corroborated by other evidence, such as Arnold's, Fulton's, and the police officer's testimony, the property found in the Jeep that belonged to the pharmacy, and the ninja mask found in the Jeep and in Shakur's pocket when he was arrested. Although we analyzed the trial court's alleged omission under the plain error rule, see Rule 2:10-2, nevertheless, the strength of the evidence against Shakur is such that defendant cannot show trial counsel's alleged ineffectiveness meets the second Strickland prong.

Addressing defendant's contentions against appellate counsel, we reject the argument counsel was ineffective because he did not argue the trial court should have given an adverse inference charge pertaining to a police officer who destroyed his notes of the eyewitnesses' identifications. First, we question whether such a charge would have had any impact on the outcome.

Second, even if the victims' identifications of defendant had been neutralized by an adverse inference charge, there was still considerable evidence implicating defendant. Not only was there co-defendant Arnold's testimony, who provided considerable evidence defendant committed the crimes with which he was convicted, but also there was damning circumstantial evidence. As previously noted, the police found in the Jeep

17

prescription medication in bottles that bore pharmacy's name, the check that was stolen from the pharmacy's cash register, and a ninja mask. In addition, a ninja mask was in Shakur's pocket when he was arrested.

Defendant contends appellate counsel was ineffective because he did not challenge the court's charge on accomplice liability. Defendant argues that although the trial court instructed the jury that a defendant can be found guilty of first- or second-degree robbery as an accomplice, the court failed to charge that a defendant can also be found guilty of the lesser-included offense of theft as an accomplice. Defendant also contended the use of the words "and/or" in the jury instruction on accomplice liability was confusing and could have misled the jury. After reviewing the entire charge, we disagree with both contentions. Further comment on these issues in a written opinion is unnecessary. See R. 2:11-3(e)(2).

Defendant maintains appellate counsel failed to assert the trial court erred by not giving the jury an instruction about the photograph the police took of him following his arrest. For reasons previously stated, even if the trial court was required to provide an instruction, its failure to do so could not have affected the outcome of the verdict against Shakur.

Because we are satisfied from our review of the record defendant failed to make a prima facie showing of ineffectiveness of either trial or appellate

A-1301-16T4

counsel within the Strickland-Fritz test, the PCR court correctly concluded an evidentiary hearing was not warranted, see State v. Preciose, 129 N.J. 452, 462-63 (1992), and that defendant was not entitled to the post-conviction relief he sought.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1301-16T4