**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1826-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHELDON GOLDSBOROUGH,
a/k/a MICHAEL GOLDSBOROUGH,
and MICKEY GOLDSBOROUGH,

    Defendant-Appellant.

_____

Submitted November 14, 2023 – Decided December 5, 2023

Before Judges Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 17-11-1056.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen Christopher Sayer, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from a December 6, 2022 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm, substantially for the reasons set forth by Judge Kevin T. Smith in his well-reasoned written opinion.

I.

We incorporate the facts leading to defendant's April 5, 2019 convictions from our decision on defendant's direct appeal, State v. Goldsborough, No. A-3501-18 (App. Div. Feb. 12, 2020). The following facts are pertinent to this appeal.

On August 31, 2017, law enforcement officers executed an arrest warrant for defendant, based on charges stemming from a double homicide. After he was arrested at the front doorway of his split-level home, officers asked defendant if anyone else was inside the home. Because defendant did not respond, officers continued to call out to determine if other people were still in the home. With the front door open, officers heard "crying coming from the basement." Therefore, the officer in charge of the operation authorized a protective sweep of the home.

According to Detective Brian Cole, his unit of officers conducted the sweep to ensure there was no one injured inside the home and that there were no other persons in the home who could pose a threat to the officers. Following the sweep, Cole's unit found two young girls, later identified as defendant's daughters, crying in a basement bedroom.

Detective Cole's unit continued its protective sweep of the basement area and found drug paraphernalia, items covered in white powder, and two ballistic vests in a laundry room adjacent to the area where other contraband was found. After obtaining a search warrant, officers also found multiple weapons and ammunition in the home and in a detached shed, along with additional drug manufacturing equipment and paraphernalia.

In November 2017, defendant was charged with various offenses in a multi-count indictment, including: first-degree maintaining or operating a facility for the production of heroin; several counts of second-degree possession of a weapon while committing a drug offense, N.J.S.A. 2C:39-4.1(a); and second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(b)(1).

In December 2017, defendant moved to suppress the evidence seized from his home. Between March and August 2018, the trial court conducted an

A-1826-22

evidentiary hearing on the suppression motion over the course of several days. The State called Detective Cole to testify at the suppression hearing; the defense called the lead investigator involved with defendant's arrest, Detective Charles Mackafee, as well as defendant's children and his girlfriend. Defendant's girlfriend's account of what occurred on the day of defendant's arrest differed in some respects from Detective Cole's testimony.

The trial court entered an order on September 14, 2018, denying defendant's suppression motion. In a written opinion accompanying the order, the judge found the testimonies of Detective Cole and defendant's girlfriend were "largely credible." But the judge also concluded "[t]here were some incons[iste]ncies between their testimonies" regarding what occurred in defendant's home after his arrest. The judge found the "irreconcilable inconsistencies between their versions of the events" were "understandable given their relative positions [in defendant's home], the speed at which the events occurred[,] and temporal considerations."

In rejecting defendant's argument that officers unlawfully entered defendant's home after his arrest, the judge credited Detective Cole's testimony that after defendant was arrested at his front doorway, "officers identified noises/crying/distress sounds emanating from the lower level of the home."

4

Although the judge credited the girlfriend's testimony that she was inside the home after defendant was taken into custody, he found she "was . . . on the second floor at the time the sweep was initiated," and it was only after Cole found the girls inside the lower-level bedroom and his unit was "already out of that bedroom and making entry to the other section of the lower-level" that the girlfriend went to the basement area of the home to retrieve her children.

The judge also credited Detective Cole's testimony that the sweep was authorized by an officer in charge of Detective Cole's unit, and that it "was limited in duration, cursory in nature and confined to areas where potential threats to the safety of officers on scene might be located." Further, the judge found that during the limited protective sweep, officers lawfully discovered contraband in plain view. Accordingly, the judge denied defendant's suppression motion, concluding "the conduct of [Detective Cole's] unit was objectively reasonable under the totality of the circumstances" and the sweep was performed "for officer safety."

Defendant moved for reconsideration of the September 14 order. Following argument on the motion on February 25, 2019, the judge issued an oral opinion, denying the application. He issued a conforming order three days later. In the judge's oral opinion, he noted defendant was arrested "incident to

5

[a] . . . homicide investigation." The judge also stated, "the people who were removed from the premises prior to the arrest of . . . [defendant's girlfriend] declined to state who else was in the property." He found this fact was "significant because it created a significant risk to the officers as to who else [wa]s in [his home]." The judge also reiterated that after defendant's arrest, officers heard "noises coming from the residence in the basement." Additionally, he found that any statements defendant's girlfriend made to officers about her daughters being downstairs in the home were "after[] . . . the decision to sweep the house had been made."

Immediately following the judge's denial of defendant's reconsideration motion, defendant entered into a conditional plea agreement and pled guilty to an amended charge of second-degree conspiracy to manufacture, distribute, or possess heroin with intent to distribute, N.J.S.A. 2C:5-2(a)(1), and second-degree possession of a firearm while committing a CDS offense. Defendant was sentenced on April 5, 2019, to an aggregate ten-year prison term with forty-two months of parole ineligibility, and his remaining charges were dismissed.

On February 12, 2020, we affirmed the denial of defendant's suppression motion, albeit for reasons different than those expressed by the suppression judge. Goldsborough, slip op. at 15. We concluded law enforcement's entry

6

into defendant's home on the date of his arrest was lawful based on the emergency-aid exception to the search warrant requirement, and "[b]ecause law enforcement discovered [defendant's contraband] in plain view while performing a valid search under the emergency-aid exception, denial of [his] motion to suppress the seized evidence was proper." Id. at 14-15.

In reaching these conclusions, we deferred to the judge's finding that Detective Cole credibly testified he "heard crying coming from the basement of defendant's home as the detective waited for defendant to be transported to the police station." Id. at 12. Further, we determined that "[b]ased on the crying sound, . . . officers had 'an objectively reasonable basis to believe that an emergency require[d] . . . immediate assistance.'" Id. at 12-13 (second alteration and omission in original) (quoting State v. Edmonds, 211 N.J. 117, 132 (2012)). We also stated the suppression judge did not find the girlfriend's testimony credible, id. at 13, but our conclusion in this regard was limited to the issue of whether officers properly entered the home under the emergency-aid doctrine after they heard crying sounds coming from the basement area.

Additionally, we determined the judge properly found officers lawfully entered the basement, considering: Detective Cole credibly testified defendant was known for being "involved in . . . weapons offenses," id. at 3, Cole heard

7

"crying coming from the basement"; and he stated that officers "had 'an obligation to verify . . . why the crying[ was] occurring,'" id. at 13, as they were "unsure whether the crying was from someone who was injured," ibid. Thus, we held "there was a nexus between the perceived emergency based on the crying sounds and the places [officers] searched in [defendant's] basement," and that "[o]nce the officers located [defendant's daughters] in the basement bedroom, the officers had a reasonable suspicion that there may have been other individuals in the basement who needed emergency aid." Id. at 13.

The Supreme Court denied defendant's petition for certification in September 2020. State v. Goldsborough, 244 N.J. 171 (2020). In October 2021, he filed a PCR petition, claiming his attorney during the suppression hearing, as well as appellate counsel, provided ineffective assistance. Defendant specifically argued suppression counsel was ineffective for neglecting to argue the State's failure to secure bodycam and dashcam footage from the date of his arrest lessened the credibility of its witnesses at the suppression hearing. He also contended suppression counsel should have addressed certain discrepancies between the testimony provided by Detectives Cole and Mackafee. Additionally, defendant argued appellate counsel was ineffective for failing to move for reconsideration of our February 12, 2020 decision, based on our brief

A-1826-22

statement that the suppression judge did not find the girlfriend to be credible.

Judge Smith heard argument on the PCR petition in November 2022, and denied the application without an evidentiary hearing on December 6, 2022. The judge found defendant failed to present a prima facie claim of ineffective assistance of counsel (IAC). Judge Smith explained that defendant "fail[ed] to satisfy the Strickland[1] test because he relie[d] on bald assertions and d[id] not establish any of counsel's actions caused him prejudice." Judge Smith also stated, "the issues [defendant] br[ought] forth [were] previously decided on the merits by the Appellate Division" and "an application for [PCR] is not a 'do over' for unsatisfied petitioners."

Regarding defendant's argument that suppression counsel was ineffective for failing to obtain lost camera footage from the day of defendant's arrest to impeach the detectives' testimonies, Judge Smith stated, "it is clear that if such video footage ever existed, [defendant] had then and has now no idea what it would show. The assertion that it would corroborate his position today is at best hopeful but without question[,] a bald assertion." Further, the judge stated:

> [Defendant] baldly asserts the video camera footage
> would have proved there were several discrepancies
> between Detective Cole's testimony and . . . [the
> girlfriend's] testimony. . . .

---

[1] Strickland v. Washington, 466 U.S. 668, 687 (1984).

The discrepancies . . . [defendant] references relate to how many individuals exited [defendant's] home during the execution of his arrest warrant. . . .

. . . [T]here was conflicting testimony between the incident report made the day of [defendant]'s arrest and testimony given by the detectives and [defendant's girlfriend]. This was all explored in detail through direct and cross[-]examination during the suppression hearing. But the [c]ourt fails to see how what has already been clarified through testimony remains unreliable without video camera footage. The suppression court had the benefit of observing the witnesses through direct and cross[-]examination and could judge credibility and make findings sufficient to resolve the motion.

Judge Smith further explained:

[Defendant] had a full appellate hearing [and] a complete opportunity to challenge the issues he complains of. Appellate counsel raised several points, among them was the search of [defendant]'s home and conflicting testimony between [defendant's girlfriend] and the detectives. . . . An unsuccessful appeal, although[] disappointing[,] . . . is not an excuse to re-litigate at a [PCR] proceeding. As such, . . . [defendant] cannot raise th[ese] argument[s] at this time. . . . [and] has failed to satisfy either prong of the Strickland test . . . .

Additionally, Judge Smith found defendant's suppression "counsel was not ineffective for not addressing the inconsistencies between Detective Cole's and MacKafee's testimonies" as "the discrepancies . . . were clarified through

10

additional testimony." The judge also stated he could not find any discrepancies in the detectives' testimonies "were purposeful lies" or that "counsel's failure to turn the suppression court in his favor over these inconsistencies amount[ed] to [IAC] or prejudice . . . under Strickland."

Finally, Judge Smith found defendant's appellate counsel "was not ineffective for failing to" seek reconsideration of "the alleged[] incorrect 'underpinnings' of the Appellate Division's decision." Judge Smith rejected defendant's arguments that we "misinterpreted the facts" in our 2020 opinion and "should not have applied the emergency aid doctrine to the search of [defendant]'s home." The judge found defendant misunderstood our reference to the girlfriend's testimony, explaining:

> There is no denying the suppression court stated on the record [the girlfriend's] testimony was credible. . . . But this credibility [finding] only pertained to whether [the girlfriend] was in the residence when [defendant] was arrested, not whether others remained in the house during the execution of the arrest warrant. Therefore, when [the appellate panel] state[d] the [suppression] court found [the girlfriend's] testimony uncredible[,] it [was] referring to the number of individuals in the residence and not the location of [defendant]'s arrest. Failing to raise this point to the appellate [panel was] not [IAC] . . . .
>
> Regardless, the standard for law enforcement's action does not necessarily need to comport with the suppression court's view of a suppression hearing

11

witness's credibility. When exigent circumstances are present, . . . officers serving in a community-caretaking role are empowered to make a warrantless entry into a home under the emergency-aid exception to the warrant requirement. . . .

. . . [H]earing cries coming from inside the home was objectively sufficient for the officers to act under the emergency[-]aid doctrine. That is as found by the Appellate Division without regard to [the girlfriend's] credibility. [The girldfriend's] later testimony, even if deemed credible, that she told police the house was empty[,] need not be the controlling factor for whether police should or should not act.

. . . .

. . . [the girlfriend's] testimony[,] whether credible or not[,] does not affect the emergency[-]aid doctrine. This is because even though [defendant was] arrested outside of his home, there still existed a danger to the officers and others at the scene. As Det[ective] Cole testified, the officers "weren't sure that there was nobody left inside the residence."

Thus, the judge found appellate counsel was not ineffective for failing to move for reconsideration of our 2020 decision, stating, "such [an] effort would [have been] futile and without merit."

II.

On appeal, defendant raises the following contentions for our consideration:

POINT I

12

THE TRIAL PCR COURT ERRED IN REFUSING TO GRANT AN EVIDENTIARY HEARING.

    A.    PETITIONER HAS PRESENTED A PRIMA FACIE CASE THAT TRIAL COUNSEL WAS INEFFECTIVE.

    B.    PETITIONER HAS PRESENTED A PRIMA FACIE CASE THAT APPELLATE COUNSEL WAS INEFFECTIVE.

These arguments lack merit. R. 2:11-3(e)(2). We add the following comments.

To succeed on an IAC claim, a defendant must satisfy the two-prong test enunciated in Strickland, 466 U.S. at 668. Failure to satisfy either prong requires the denial of a PCR petition. Id. at 700.

Under the first Strickland prong, a defendant must show counsel's performance "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88. "The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citation omitted). Further, there is a strong presumption counsel

13

"rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

To satisfy the second Strickland prong, a defendant "must show that the deficient performance prejudiced the defense." Id. at 687. Because prejudice is not presumed, State v. Fritz, 105 N.J. 42, 52 (1987), a defendant is required to demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984). A defendant also must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In the context of a PCR petition challenging a guilty plea based on an IAC claim, the second prong is established when the defendant demonstrates a "reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). But a defendant also must show "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

14

"The right to effective assistance includes the right to effective assistance of appellate counsel on direct appeal." State v. O'Neil, 219 N.J. 598, 610 (2014). Thus, the Strickland standard also applies to claims regarding appellate counsel's performance. State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987).

Appellate counsel does not have an obligation to "advance every argument, regardless of merit, urged by the appellant," Evitts v. Lucey, 469 U.S. 387, 394 (1985), but "should bring to the court's attention controlling law that will vindicate [the appellant]'s cause." O'Neil, 219 N.J. at 612. Failure to do so constitutes ineffective assistance if there is a "reasonable probability" that the outcome of the appeal would have been different. Id. at 617. Thus, to prove ineffectiveness, a defendant must prove an underlying claim to relief is meritorious. Morrison, 215 N.J. Super. at 547-51.

> To obtain an evidentiary hearing on a PCR petition, a defendant must establish a prima facie case for relief, material issues of disputed fact, and show . . . an evidentiary hearing is necessary to resolve the claims. The [defendant] must ultimately establish the right to PCR by a preponderance of the evidence. State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (citations omitted).

A defendant's IAC claims "must be supported by 'specific facts and evidence supporting [the IAC] allegations.'" State v. Peoples, 446 N.J. Super.

15

245, 254 (App. Div. 2016) (quoting State v. Porter, 216 N.J. 343, 355 (2013)). If a defendant's "allegations are too vague, conclusory or speculative," that "defendant is not entitled to an evidentiary hearing." Porter, 216 N.J. at 355 (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

Governed by these standards, we discern no basis to disturb the December 6, 2022 order. Thus, we affirm for the reasons set forth in Judge Smith's thoughtful written opinion. In doing so, we agree with his findings that defendant misunderstood our opinion—to the extent we briefly referenced the suppression judge's finding about the girlfriend's credibility—and that appellate counsel was not deficient for failing to move for reconsideration of our 2020 decision. That is because our passing comment about the girlfriend's credibility was confined to our discussion about the lawfulness of the officers' entry into defendant's home on the date of his arrest, and tethered to our ultimate conclusion that "officers had a reasonable suspicion that there may have been other individuals in the basement who needed emergency aid."

Under these circumstances, Judge Smith correctly denied defendant's PCR petition without an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                A-1826-22