**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4798-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYRE S. MILLEDGE, a/k/a
TYREE MILLEDGE,
SHAMAR MILLEDGE,
and BIG-I,

     Defendant-Appellant.

_____

Submitted October 19, 2020 – Decided December 28, 2020

Before Judges Rothstadt and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 07-12-1096.

John P. Morris, attorney for appellant (Karen A. Lodeserto, on the brief).

Jennifer Webb-McCrae, Cumberland County Prosecutor, attorney for respondent (Andre R. Araujo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tyre Milledge[1] appeals from a May 13, 2019 order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. Defendant argues that his appellate counsel rendered ineffective assistance by failing to challenge the trial court's denial of his motion to withdraw his guilty plea to aggravated manslaughter. After carefully reviewing the record, we reject defendant's contention and affirm the order denying PCR.

I.

On June 23, 2007, defendant was riding as a passenger on a dirt bike driven by co-defendant Donald Thomas when he fired a handgun at a home they were riding past. Defendant had been instructed by a gang leader, co-defendant Raheem Williams, to shoot Thomas "Moopy" Baker. The shot missed Moopy but struck and killed Moopy's mother, Elizabeth Taylor. After learning that he had failed to carry out Williams' order to execute Moopy, defendant fled to Georgia because he knew Williams was "looking for [him]." Defendant was eventually arrested in Georgia and sent back to New Jersey.

---

[1] The record reflects inconsistent spellings of defendant's name as either "Tyre" or "Tyree."

Defendant and his two co-defendants were indicted for multiple charges including first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); first-degree conspiracy to commit murder, N.J.S.A. 2C:11-3(a)(1) and (2) and N.J.S.A. 2C:5-2(a)(1) and (2); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and unlawful possession of a weapon, N.J.S.A. 2C:39-4(a).

In December 2009, defendant pled guilty to the lesser charge of first-degree aggravated manslaughter pursuant to a negotiated plea agreement in which he agreed to testify against Williams. Thereafter defendant filed a motion to withdraw his guilty plea. The trial court convened a hearing after which it denied defendant's motion.

The parties agreed that defendant's sentencing would be delayed so that the State's case against Williams could proceed. In August 2014, defendant was sentenced in accordance with the plea agreement to a twenty-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). Defendant appealed from his sentence only, and an excessive sentence panel of our court affirmed. See State v. Milledge, No. A-003099-14 (App. Div. June 22, 2015).

In his subsequent PCR petition, defendant initially argued that his trial counsel had been ineffective in failing to pursue a diminished capacity defense. At oral argument, defendant additionally claimed that his appellate counsel

rendered ineffective assistance by appealing only the sentence and by not appealing the denial of his motion to withdraw his plea. The PCR judge ordered an evidentiary hearing on whether defendant asked counsel to appeal the denial of his motion to withdraw and whether defendant was competent to plead guilty. The State filed a motion for reconsideration. Pursuant to a consent order, the PCR judge dismissed the motion for reconsideration, held the previously ordered evidentiary hearing in abeyance, and permitted the parties to file supplemental briefs for additional oral argument.

Defendant accordingly filed new submissions incorporating the two ineffective assistance claims. At oral argument, defendant focused on appellate counsel's failure to argue that the motion to withdraw the plea should have been granted. The PCR judge then decided that an evidentiary hearing was needed to determine why the "pool" attorney who was assigned by the Public Defender to represent defendant on appeal chose only to challenge the sentence. At that hearing, appellate counsel testified that the Public Defender's appellate intake unit determined that the appeal would be limited to an excessive sentence argument.

The PCR judge found that the attorney in the Public Defender appellate intake unit who screened the case would have seen from the case file that

defendant had moved unsuccessfully to withdraw his guilty plea. After carefully reviewing the transcript of the withdrawal motion hearing, the PCR judge ultimately denied defendant's petition, reasoning that "the attorney at the Public Defender's Office who did the intake and prepared the notice of appeal could have reasonably found the issue of withdrawing the plea to be without merit based on the opinion given by [the trial court]."

Defendant raises the following issue for our consideration:

POINT I

THE PCR [JUDGE] ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO PROPERLY REVIEW MR. MILLEDGE'S FILE AND FIND THAT A NOTICE OF MOTION TO WITHDRAW HIS GUILTY PLEA HAD BEEN ARGUED, AND ERRONEOUSLY DENIED.

II.

We begin our analysis by recognizing that PCR is not a substitute for direct appeal. R. 3:22-3. Rather, it serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. Ibid. The defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

5

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient[.] Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Furthermore, in determining whether defense counsel's representation was deficient, "'[j]udicial scrutiny . . . must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997) (quoting Strickland, 466 U.S. at 689).

A-4798-18T1

The second Strickland prong is also demanding. "[T]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." State v. Allegro, 193 N.J. 352, 367 (2008) (quoting Castagna, 187 N.J. at 315). Counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different than if counsel had not made the errors. Strickland, 466 U.S. at 694.

The Strickland/Fritz two-pronged standard also applies to claims of ineffective assistance of appellate counsel. State v. Morrison, 215 N.J. Super. 540, 547 (App. Div. 1987). The hallmark of effective appellate advocacy is the ability to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most, on a few key issues." Jones v. Barnes, 463 U.S. 745, 751–52 (1983). Importantly for purposes of this appeal, it is well-settled that failure to pursue a meritless claim does not constitute ineffective assistance. State v. Webster, 187 N.J. 254, 256 (2006). Appellate counsel does not have an obligation to raise spurious issues on appeal. Ibid.

III.

We next apply these general principles to the decision made by the Public Defender's intake unit to appeal only the sentence and not the denial of

defendant's motion to withdraw his guilty plea.[2] At the motion to withdraw the guilty plea, defense counsel argued that defendant did not understand what he was agreeing to because of intellectual disabilities. The State argued defendant only wanted to withdraw his plea because he had second thoughts about testifying against Williams.

Defense counsel at the motion hearing relied on a 2011 psychiatric evaluation conducted by Dr. Kenneth J. Weiss, who opined that defendant was severely intellectually challenged. According to Dr. Weiss, defendant could not have knowingly and voluntarily entered into a plea agreement.

The State countered with an earlier psychological evaluation obtained through discovery that indicated that defendant suffered from only a mild intellectual disability.

The State also introduced correspondence between defendant, Williams, Obadiah Taylor,[3] and a county jail inmate named Kenneth Ransome. These

---

[2] We believe the screening of cases by the Public Defender appellate intake unit is an integral part of the professional assistance provided to a convicted indigent defendant. We therefore address whether, under the first Strickland prong, it was ineffective assistance on the part of the intake unit not to assign pool counsel to address the plea withdrawal issue. We also consider whether, under the second Strickland prong, the result would have been different if that issue had been raised on direct appeal.

[3] Obadiah Taylor provided defendant the gun that was used in the homicide.

letters evinced a scheme to fabricate a basis for withdrawing defendant's guilty plea, ostensibly for the benefit of Williams. A letter from Taylor to defendant, for example, encouraged defendant to endorse a draft "affidavit of truth" claiming defendant made false statements against Taylor and Williams. Another letter sent by defendant to Williams stated that defendant was "100%" and mentioned the affidavit Taylor drafted for him. A letter from Ransome to Williams articulated hypothetical arguments that would allow defendant to withdraw his plea agreement. We note that none of those fabricated arguments suggest that defendant lacked the mental capacity to understand the terms and consequences of the plea agreement.

In rendering his decision to deny defendant's motion, the trial judge emphasized the steps taken to ensure that defendant understood the terms and consequences of pleading guilty to aggravated manslaughter. The judge also noted that prior to the motion to withdraw, defense counsel never indicated "that there was any difficulty with the defendant understanding what was happening or what the consequences were or what his agreement was in regard to the matter."

The trial judge then applied the four-factor test articulated in <u>State v. Slater</u>, carefully analyzing each factor.[4]  The trial judge found that defendant made no colorable claim as to his innocence.  The trial judge also highlighted the jail correspondence, noting those letters "seriously call[ed] into question the validity of the defendant's claim that he did not understand the repercussions of his guilty plea."  As to the third <u>Slater</u> factor, the trial judge noted that the guilty plea had been entered pursuant to a negotiated agreement that allowed defendant to avoid the mandatory sentence for murder in exchange for his cooperation and testimony against the gang leader who ordered an execution.  Finally, the trial judge found that the State would be greatly prejudiced by withdrawal of the plea, insofar as it would have to gather and present evidence from other crimes that occurred in 2007—that is, five years prior to the withdrawal hearing.

We agree with the PCR court that the trial judge's reasoning was thorough and detailed.  We thus conclude the decision not to appeal the denial of the plea withdrawal motion falls well "within the wide range of reasonable professional assistance."  <u>Strickland</u>, 466 U.S. at 689.  Neither the Public Defender's Office

---

[4]  The four <u>Slater</u> factors are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. 145, 157–58 (2009).

nor the pool attorney it assigned to handle the appeal was required to raise a meritless argument. See State v. Gaither, 396 N.J. Super. 508, 515–16 (holding that unlike PCR counsel, a defendant's appellate counsel is not bound to advocate claims that they deem to be without merit) (citing Jones v. Barnes, 463 U.S. 745, 753–54 (1983)). Cf. Webster, 187 N.J. at 258 ("If after investigation [PCR] counsel can formulate no fair legal argument in support of a particular claim raised by defendant, no argument need be made on that point."). Even had defendant raised the plea withdrawal on direct appeal, we see no reasonable probability that the trial court's well-reasoned decision would have been reversed. See Strickland, 466 U.S. at 694. Defendant has thus failed to establish either prong of the Strickland/Fritz test.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4798-18T1