**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1064-22

STATE OF NEW JERSEY,

Plaintiff-Respondent,

v.

CHRISTIAN CORTES,

Defendant-Appellant.

___________________________

Submitted March 6, 2024 – Decided April 1, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-07-1061.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Randolph E. Mershon III, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Christian Cortes appeals from a September 22, 2022 Law Division order denying his petition for post-conviction relief (PCR) alleging ineffective assistance of trial and appellate counsel without an evidentiary hearing. After carefully reviewing the record in light of the arguments of the parties and governing legal principles, we affirm, substantially for the reasons set forth in Judge Thomas J. Buck's comprehensive written opinion.

I.

Defendant was charged with first-degree murder, second-degree unlawful possession of a handgun without a permit, and second-degree possession of a firearm for an unlawful purpose. Following a Miranda[1] hearing, the trial court granted in part and denied in part defendant's motion to suppress a statement he made to the police. After a jury was sworn to hear the case and before opening statements, defendant entered into a plea agreement. The first-degree murder charge was amended to first-degree aggravated manslaughter, and the other charges were dismissed. Defendant preserved the right to challenge the admissibility of his recorded statement made to the police and phone calls he made from the county jail to his girlfriend. The trial court accepted defendant's guilty plea. Defendant was sentenced to sixteen years' imprisonment subject to

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

the No Early Release Act, N.J.S.A. 43-7.2, the sentence recommended in the plea agreement.

We affirmed defendant's conviction and sentence on direct appeal. State v. Cortes, No. A-0505-19 (App. Div. Apr. 19, 2021). The Supreme Court denied his petition for certification. 248 N.J. 386 (2021).

We need only briefly summarize the facts adduced at the Miranda hearing and plea allocution, which are fully recounted in our opinion affirming defendant's conviction on direct appeal. Cortes, slip op. at 2-9. Defendant purchased marijuana from a man named Manuel Garcia. The marijuana was thereafter stolen from defendant, who believed Garcia was behind the robbery. Based on his belief, defendant purposely and knowingly fired a gun at Garcia's car, which had tinted windows, unaware Garcia's mother was sitting in the car at the time. The bullet struck Garcia's mother in the neck, and she died from her wound.

Police officers went to defendant's residence and brought him to headquarters for questioning. Defendant asserted the police officers questioned him while in the police car. At headquarters, Sergeant Thierry Lemmerling and Detective Erika DiMarcello interrogated defendant. Defendant was read his Miranda rights prior to the video-recorded interview.

At his plea allocution hearing, defendant admitted that he caused victim's death, fired into the driver's side window, and the windows were blackened. He also admitted his act of shooting into the car was reckless because he did not know where the bullets would hit and manifested an extreme indifference to the value of human life because he could have struck anyone on the street. In addition, defendant admitted he consciously disregarded a known risk.

Prior to sentencing, defendant moved to withdraw his guilty plea. In support of his motion, he argued ineffective assistance of first trial counsel[2] and claimed he was innocent. Defendant's newly assigned second counsel argued at the motion to withdraw hearing that: (1) defendant lacked the requisite "manifest indifference to human life" necessary to sustain a conviction for first-degree manslaughter; and (2) his first trial counsel was ineffective for not meeting with defendant enough, not discussing trial strategy, failing to explain the difference between reckless manslaughter and aggravated manslaughter, and

[2] Second trial counsel raised an ineffective assistance of counsel argument against first trial counsel in support of defendant's motion to withdraw his guilty plea. Second counsel argued that first trial counsel was ineffective for not meeting with defendant enough, talking trial strategy with him enough, and that first trial counsel did not explain the difference between reckless manslaughter and aggravated manslaughter. First trial counsel testified at the motion. Defendant's motion to withdraw his guilty plea was denied. The motion court found defendant received effective assistance of counsel.

pressuring him to accept the plea agreement because first counsel was unprepared for trial.

Defendant and his first counsel testified at the motion to withdraw hearing. Following the hearing, defendant's motion to withdraw his guilty plea was denied, and he was sentenced as stated.

On May 13, 2022,[3] defendant filed a pro se petition for PCR alleging ineffective assistance of first trial and appellate counsel. Defendant claimed: (1) his first trial counsel failed to communicate, failed to investigate the case, and failed to provide him with full discovery "before encouraging [him] to take a plea deal," depriving him of his due process and constitutional rights to a fair trial; (2) his second trial counsel failed to present all of his cognizable claims of ineffective assistance of counsel in support of defendant's motion to withdraw his guilty plea; and (3) cumulative errors of his first and second trial counsel deprived him of effective legal representation.

Defendant certified that on July 15, 2017, he gave a recorded interview to police and before the interview commenced, he answered questions posed by Sergeant Thierry Lemmerling. Defendant also certified that he advised both his

[3] In his PCR petition, defendant states he filed for such relief on October 18, 2021. However, defendant's supporting certification is dated May 13, 2022.

trial and appellate counsel that he wanted to appeal his sentence on the basis it was excessive. The judge appointed counsel to represent defendant.

Upon considering the parties' briefs and oral argument, Judge Buck denied defendant's petition without an evidentiary hearing for the reasons set forth in his comprehensive written opinion. The judge found, contrary to defendant's assertion that first trial counsel raised the "two-step procedure"[4] argument at the Miranda hearing, thus, second trial counsel did not fail to argue this issue at defendant's motion to withdraw hearing to avoid preclusion under Rule 3:22-4.[5]

---

[4] A "two-step procedure" is a "question-first, warn-later" interrogation, which is a technique to undermine the efficacy of Miranda and our state law privilege because it amounts to a failure to advise defendant of his Miranda rights. State v. O'Neill, 193 N.J. 148, 180, 184-85 (2007).

[5] Rule 3:22-4(a)(1) - (3) provides:

> (a) First Petition for [PCR]. Any ground for relief not raised in the proceedings resulting in the conviction, or in a [PCR] proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds:
>
> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or

The judge explained that during the Miranda hearing on July 9, 2018, first counsel asked defendant: "So inside the car, the vehicle while you were being transported to the police station prior to the statement that was in the videotape . . . you were being asked questions by Sergeant Lemmerling?" Defendant responded, "Yeah. We were talking about the robbery." Defendant's first counsel also cross-examined the interrogating officer—Sergeant Lemmerling—during the Miranda hearing and queried the officer if a conversation took place between defendant and the officer prior to defendant giving his statement.

---

> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or
>
> (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.
>
> A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence.
>
> A denial of relief would be contrary to a new rule of constitutional law only if the defendant shows that the claim relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings.

The judge highlighted that we addressed defendant's "two-step procedure" argument in our opinion, and therefore, the record does not support defendant's claim that first trial counsel failed to raise this issue. Cortes, slip op. at 2. The judge emphasized Sergeant Lemmerling asked defendant in his recorded interview: "'You are hiding your car from me. You had said you were hiding— because you said [Garcia] knows what your car is like, that's why you parked it in the other spot rather, where you usually park. Why are you hiding your car from me?'" And that the "mention of a comment" by defendant at a prior time and "a bare assertion" of another question by the officer does not, standing alone, indicate a two-step interrogation technique was used that would require suppression of the statements. The judge also noted that in any event, the motion to suppress would not have been successful; hence, trial counsel was correct not to bring it.

Regarding defendant's pro se arguments, the judge found they lacked merit, and his first and second trial counsel did not fail to communicate, investigate the case, or provide discovery. The judge determined "the evidence is overwhelming that defendant's claim is a falsehood," and cited to the motion to withdraw transcript where the motion judge asked defendant's first attorney if defendant was provided with discovery prior to entering his guilty plea. First

counsel responded defendant "was provided with the full discovery," and he ultimately discussed "[nineteen] videos" with him in connection with the investigation. The judge underscored we previously addressed the allegation that defendant's first trial counsel did not communicate with him in our opinion, Cortes, slip op. at 22, and "these claims are nothing more than bald assertions."

The judge rejected defendant's claim that his plea was not voluntary and noted the procedure when the plea was accepted was "paramount" because defendant acknowledged he initialed each page of the plea form, that he had read and discussed the plea form with trial counsel, acknowledged trial counsel answered his questions, and he was satisfied with counsel's advice. At the plea hearing, the judge explained to defendant that the maximum sentence for aggravated manslaughter was "thirty years in prison" with a minimum sentence of "ten years," and that defendant should only accept the plea deal if the recommended sentence of sixteen years was "acceptable" to him.

Because Judge Buck found first counsel's performance was "not deficient in this regard," he concluded that second trial counsel was therefore not ineffective for failing to allege ineffectiveness of first trial counsel during defendant's plea withdrawal hearing because it was already raised by first trial counsel. A memorializing order was entered. This appeal followed.

Defendant presents the following arguments for our consideration:

POINT I

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AT HIS PLEA WITHDRAWAL HEARING FOR COUNSEL'S FAILURE TO ARGUE HE WAS PREJUDICED BY AN IMPERMISSIBLE TWO-STEP INTERROGATION.

(A) APPLICABLE LAW.

(B) TRIAL COUNSEL AT DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WAS INEFFECTIVE FOR FAILING TO ARGUE COUNSEL, WHO REPRESENTED HIM AT HIS MIRANDA HEARING, FAILED TO ARGUE HE WAS SUBJECTED TO AN IMPERMISSIBLE TWO-STEP INTERROGATION.

POINT II

APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT ARGUING THAT DEFENDANT'S SENTENCE WAS EXCESSIVE, AND ALSO, THAT DEFENDANT WAS ENTITLED TO APPLICATION OF MITIGATING FACTOR [FOURTEEN], THAT HE WAS UNDER THE AGE OF [TWENTY-SIX] AT THE TIME THE CRIME WAS COMMITTED.

POINT III

A REMAND TO THE TRIAL COURT IS REQUIRED BECAUSE DEFENDANT'S ARGUMENTS REGARDING INEFFECTIVE OF ASSISTANCE OF APPELLATE COUNSEL WERE NOT CONSIDERED AS THE COURT LEFT THEM UNADDRESSED IN ITS OPINION.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. Ibid. To sustain this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

When assessing Strickland's first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 669. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Thus, a trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under Strickland's second prong, the defendant must show "the deficient performance prejudiced the defense." Id. at 687. That is, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

The same Strickland/Fritz standard applies to the assessment of ineffective assistance of counsel claims asserted against appellate counsel. See

State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). Appellate counsel does not have an obligation to "advance every argument, regardless of merit, urged by the appellant," Evitts v. Lucey, 469 U.S. 387, 394 (1985), but "should bring to the court's attention controlling law that will vindicate [the appellant]'s cause." State v. O'Neil, 219 N.J. 598, 612 (2014). Failure to do so constitutes ineffective assistance if there is a "reasonable probability" that the outcome of the appeal would have been different. Id. at 617. Thus, to prove ineffectiveness, a defendant must prove an underlying claim to relief is meritorious. State v. Morrison, 215 N.J. Super. 540, 547-51 (1987).

Further, "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c); see State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. Cummings, 321 N.J. Super. at 170. Rather, "[i]f the court perceives that holding

an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted).

The PCR court should grant an evidentiary hearing only when: "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)).

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see als

o State v. Nash, 212 N.J. 518, 540-41 (2013). However, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing Marshall, 148 N.J. at 157-58).

III.

We next apply these foundational principles to the matter before us. Defendant argues he is entitled to an evidentiary hearing because he established a prima facie case that his first trial counsel failed to raise the two-step issue, and his second trial counsel was ineffective by failing to argue defendant was prejudiced by an impermissible two-step interrogation. Defendant's arguments are belied by the record.

Prior to the Miranda hearing, defendant's first trial counsel submitted a brief in which he argued, "[d]efendant was promised that he would be allowed to return home if he told them [the officers] 'what they wanted to hear' prior to being advised of his Miranda rights and without the benefit of [c]ounsel. Accordingly, the [d]efendant's statements must be suppressed."

Moreover, during the Miranda hearing, first trial counsel cross-examined Sergeant Lemmerling, who was accused of the impermissible two-step interrogation as follows:

> FIRST TRIAL COUNSEL: And prior to him going into that interrogation room, you had a conversation with my client prior to this statement that we saw, the videotaped statement?
>
> SERGEANT LEMMERLING: No.

FIRST TRIAL COUNSEL: You had no conversations with him whatsoever?

SERGEANT LEMMERLING: Other than probably telling him we're going to take a statement from him, no.

FIRST TRIAL COUNSEL: Okay. So if you had conversations you're saying that that's what you would have said to him?

SERGEANT LEMMERLING: Correct.

FIRST TRIAL COUNSEL: Okay. So there is a possibility that you had a conversation with him prior to the taped statement, but if it was that's what—that's—

SERGEANT LEMMERLING: It would have been limited to, go sit in the room, we're going to take a statement from you later.

FIRST TRIAL COUNSEL: Were—Did you or anybody in your vicinity prior to going into that interview room tell [defendant] that if he were to make a statement that they would let him go that day?

SERGEANT LEMMERLING: No.

FIRST TRIAL COUNSEL: So you didn't witness it; correct?

SERGEANT LEMMERLING: No.

FIRST TRIAL COUNSEL: And you didn't make that representation to my client?

SERGEANT LEMMERLING: Absolutely not.

Defendant's first trial counsel also questioned defendant directly during the Miranda hearing:

> FIRST TRIAL COUNSEL: So inside the car, the vehicle while you were being transported to the police station prior to the statement that was in the videotape, there were—you were being asked questions by Sergeant Lemmerling?
>
> DEFENDANT: Yeah. We were talking about the robbery.
>
> FIRST TRIAL COUNSEL: While you were in the backseat of the vehicle?
>
> DEFENDANT: Yes.
>
> FIRST TRIAL COUNSEL: Were you handcuffed at the time?
>
> DEFENDANT: Yes I was handcuffed. I was andcuffed the whole time.
>
> FIRST TRIAL COUNSEL: Okay. And then you arrive at the headquarters, at the police station.
>
> DEFENDANT: Yeah.

At the end of the Miranda hearing, the motion judge determined:

> As far as credibility goes, I have some problems with . . . defendant's answers with regard to his version of the events. You know often the truth is somewhere in the middle. But I find a lot of what he said to be very biased and skewed, and unrealistic. He was downplaying his understanding of rights. I don't believe that. In other words there were too many

> denials in his testimony. That in my mind brought into question [h]is overall credibility. On a homicide investigation, whether an investigating officer actually made false promises to somebody, I don't see it happening. I don't see it happening quite frankly. He's going with them, and he did go with them in custody, in handcuffs. And I just don't see it happening, tell us what we want to hear and we'll let you go home. And even if some police officer uttered such a ridiculous statement or remark to this defendant, there is no way an individual as intelligent as [defendant] would put any stock into it. Clearly, by how he interacted with these police, he was not going to go for such a thing.

Judge Buck noted "[t]he opinion of the Appellate Division supports that this point was made," because we stated "[d]efendant asserted that the officers began questioning him in the police car on the way to headquarters." Thus, not only did first trial counsel litigate the two-step issue, it was also addressed on direct appeal.

We agree with Judge Buck that defendant has not established a prima facie case for ineffective assistance of first trial counsel relative to the two-step procedure. Moreover, because first trial counsel clearly raised this issue, it was unnecessary for second trial counsel to argue defendant's statement was inadmissible as the result of a purported two-step procedure. Defendant's claim that his second trial counsel was ineffective for failing to argue his statement was inadmissible and would have warranted a withdrawal of his guilty plea,

gone to trial, and won his case, is flawed. The two-step procedure argument was unequivocally raised when the Miranda issue was heard and adjudicated.

Defendant's assertion is simply untrue. And, his supposition that he would have gone to trial or negotiated a better plea deal is a bald assertion based upon pure speculation. Our de novo review of the record convinces us that defendant failed to satisfy the first prong of the Strickland/Fritz analysis. We agree with Judge Buck that defendant failed to show any deficient prejudice under the second prong. See Marshall, 148 N.J. at 89, 157 (citations omitted).

## IV.

Next, defendant contends his appellate counsel was ineffective for not arguing his sentence was excessive. In his merits brief, defendant argues: (1) mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"), should not have been given little weight; (2) mitigating factor eight, N.J.S.A. 2C:44-1(b)(8) ("[t]he defendant's conduct was the result of circumstances unlikely to recur") should have been given weight; and (3) mitigating factor two, N.J.S.A. 2C:44-1(b)(2) ("[t]he defendant did not contemplate that the defendant's conduct would cause or threaten serious harm") should have applied.

In State v. Roth, 95 N.J. 334, 364-65 (1984), our Supreme Court identified the relevant criteria for our review of a sentence:

> [A]n appellate court can (a) review sentences to determine if the legislative policies . . . were violated; (b) review the aggravating and mitigating factors found . . . to determine whether those factors were based upon competent credible evidence in the record, and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of th[e] case make the sentence clearly unreasonable so as to shock the judicial conscience.

Here, the sentencing judge conducted a thorough analysis of the aggravating and mitigating factors and determined the aggravating factors substantially outweigh the mitigating factors. Consequently, appellate counsel's failure to argue defendant's sentence was excessive was not ineffective.

For example, regarding mitigating factor seven, the sentencing judge stated:

> [T]his mitigating factor says that the defendant has no history of prior delinquence or criminal activity, or has led a law-abiding life for a substantial period of time before the commission of the present offense. It doesn't say "has no prior convictions." It says "has no history of prior criminal activity." Well, we know that [defendant] has a lengthy history of criminal activity, if only the regular purchase of marijuana to . . . support his own habit.

> So no prior record? I think that can be considered a mitigation. But when you factor in what the actual mitigating factor says, it doesn't say anything about having convictions. And this is documented and uncontroverted that he was involved in criminal activity. Now, maybe not the most egregious criminal activity. I know [the prosecutor] takes the . . . position that he was a drug dealer, but I really don't—it's kind of speculative. But . . . it's undisputed that he was a drug user. And by the way, being a drug user, a regular, daily user of marijuana, what that does is—it's people like that who keep drug dealers in business. And when drug dealers are in business, violent crime is likely to occur.
>
> So I would find that mitigating factor applies (sic) to—at least to the extent that he's got no prior record. However, I . . . ascribe minimal weight to . . . mitigating factor seven because it is clearly documented that [defendant] does have a documented substantial history of being involved in criminal activity[] . . . albeit perhaps not the most serious criminal activity, but nonetheless, it is criminal activity. And it was, for a substantial period of time before the commission of the present offense. That's documented in . . . the [Pre-Sentence Investigation Report]. He's been using marijuana on a daily basis—I think since age [sixteen]. All the way up through the incident offense; on a daily basis. So I will ascribe some weight, but it's minimal weight to mitigating factor seven.

Defendant argues "[t]his was in error because the sentencing judge used conjecture to impute a 'lengthy history of criminal activity' as to . . . defendant in assessing the weight the factor's application." However, mitigating factor seven applies when "[t]he defendant has <u>no history</u> of prior delinquency <u>or</u>

criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense." N.J.S.A. 2C:44-1(b)(7) (emphasis added). The record is clear the sentencing judge considered and attributed weight to mitigating factor seven. We discern no error.

As to mitigating factor eight, the sentencing judge found this factor inapplicable because "eight flies in the face of number three" and determined defendant was likely to re-offend. The sentencing judge attributed "extreme" weight to factor three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense") and concluded:

> So I do think there is a substantial risk that this defendant would re-offend. [A]nd when I say re-offend, I mean re-offend with a violent crime; a crime of violence. He's prone to violence and what sets his fuse off doesn't take much. And he's demonstrated that he is willing and able to go to extremes in the interest of revenge or retaliation, including using a nine-millimeter handgun against someone who he perceives, he perceives, wronged him. And that tells me that the risk of . . . re-offense, in . . . the crime of violence, is very high. [A]nd the prosecutor points it out in his brief and he's right. It's the weight of these factors, not the number of facts. And aggravating factor number three is an extremely weighty aggravating factor.

As for aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), ("[t]he need for deterring the defendant and others from violating the law") the sentencing judge explained:

> So specific deterrence is a very weighty factor. But general deterrence in this case is huge, and it's extremely weighty. In other words, the word needs to get around that [defendant] got the maximum under the plea agreement for using a firearm and . . . killing this woman. [A]nd therefore, other people, perhaps his associates, people who know him, other people who—who may be inclined to commit such atrocious acts, may think twice when they see that you know what? You arm yourself with a handgun and go after somebody and kill people, you're going to get the full weight of the law. And that's general deterrence. And . . . that's an extremely weighty aggravating factor. Again, I think that the . . . full impact of this sentence, . . . the [sixteen] years, is necessary for the protection of the public as long as possible. And also to get the word out that this type of violent crime is going to be met with the harshest penalties. And that's aggravating factor number nine, general deterrence.

We are convinced the sentencing judge conducted a thorough analysis of the aggravating and mitigating factors, which is supported by the substantial credible evidence in the record.

Appellate counsel does not have an obligation to "advance every argument, regardless of merit, urged by the appellant," Evitts, 469 U.S. at 394, but "should bring to the court's attention controlling law that will vindicate [the appellant]'s cause." O'Neil, 219 N.J. at 612.

Defendant was made aware prior to sentencing that he could receive a sixteen-year sentence. At the plea allocution hearing, the following colloquy ensued:

> THE COURT: . . . and I told you aggravated manslaughter—so let's say you took the case to trial and the jury came back not guilty of murder but guilty of aggravated manslaughter, right? You'd fall for sentencing anywhere in the range for aggravated manslaughter of [ten] to [thirty] years. Obviously your lawyer would be arguing for the [ten]. He may even argue that you be sentenced in the second-degree range, [five] to [ten], which he could make that. State would be arguing for the high end, the highest end being [thirty]. In this plea agreement they're saying they will ask for no more than [sixteen]. All right. That doesn't mean your lawyer—so now, instead of the range being [ten] to [thirty], it's [ten] to [sixteen]. So that doesn't mean your lawyer can't argue for the [ten], or even argue that you be sentenced in the second-degree range. It just means that it's capped, you could get no more than [sixteen]. So, between now and sentencing, you could hope that you get less sentencing, but here's what I will tell you. You should assume the worse, because if you go into this thinking you're gonna get less than [sixteen], then you do get the—because you sign on for [sixteen]—
>
> DEFENDANT: Yes.
>
> THE COURT:—and you do get the [sixteen], you're gonna be—disappointed.
>
> DEFENDANT: I understand.

THE COURT: If you do better than [sixteen], okay, you get better than [sixteen]. But I would tell you don't even take the deal unless the [sixteen] is acceptable because that's certainly within the realm of possibilities. We on the same page?

DEFENDANT: Yes.

THE COURT: All right. So, this language . . . I mean it's written in here, but it's really implied. This would imply even if it wasn't written here. Where it says [d]efense will argue for a minimum time at sentencing, no other promises—well, whether or not that was written here, he would still be doing that, arguing for the minimum time at the time of sentencing. Okay? But I just want to make sure that you understand that you are exposed to the full [sixteen]. You understand that?

DEFENDANT: Yeah, I understand that.

THE COURT: And you should expect the worse. In other words, I would tell you don't take this deal unless the [sixteen] is acceptable. You're agreeable?

DEFENDANT: Yes.

An excessive sentence argument would have been meritless based upon our review of the record, and therefore, defendant was not prejudiced by appellate counsel's failure to raise that argument.

Finally, defendant argues the matter should be remanded for resentencing and application of youth mitigating factor twenty-six. Defendant asserts this factor should be applied retroactively. However, our Supreme Court rejected

such an argument in State v. Lane, 251 N.J. 84, 97 (2022). Therefore, defendant's argument lacks merit.

Based upon our review of the record and applicable law, we are satisfied that defendant failed to make a prima facie showing of ineffectiveness of trial or appellate counsel within the Strickland/Fritz test warranting an evidentiary hearing. We are further satisfied that all of defendant's arguments raised on PCR are either procedurally barred or without substantive merit. Defendant's arguments raised on appeal were more than adequately addressed by the PCR judge and do not warrant additional discussion. R. 2:11-3(e)(2). We affirm substantially for the reasons articulated by Judge Buck in his thoughtful and thoroughly-written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION