**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0536-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MAYRENID HIDALGO-
BAUTISTA, a/k/a MAYRENID
BAUTISTA, and MAYRENID
HIDALGO,

    Defendant-Appellant.

_____

Submitted April 29, 2025 – Decided July 24, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-11-0792.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Mayrenid Hidalgo-Bautista appeals from an order denying her petition for post-conviction relief (PCR) without an evidentiary hearing based on ineffective assistance of counsel (IAC) and an earlier order denying her motion for discovery in the PCR proceeding. After our review of the record and applicable legal principles, we affirm the orders based substantially on the thorough reasons in the written decisions of Judge John M. Deitch.

I.

We summarize the underlying facts from our prior opinion in defendant's direct appeal where we affirmed her conviction for first-degree conspiracy to commit murder. State v. Hildago-Bautista, No. A-2965-18 (App. Div. June 30, 2021). Defendant along with co-defendants Rodney Rosario (a/k/a Ronney Rosario), and Alejandro Lopez (a/k/a Alex Lopez) were convicted of crimes related to the November 23, 2013 murder of Jose Luis Disla Cordero. Id., slip op. at 1-2. Rosario and Lopez were convicted of first-degree murder; conspiracy to commit murder; first-degree felony murder; second-degree burglary; second-degree possession of a weapon for an unlawful purpose; second-degree unlawful possession of a weapon; two counts of third-degree criminal restraint and two counts of fourth-degree aggravated assault.

A-0536-23

We explained:

Miguel Angel Rosario Mejia, Rosario's cousin, participated in the crime, and gave a statement to police implicating himself and the others. He entered into a plea agreement with the State in exchange for his testimony.

The trial testimony, including Mejia's, established that co-defendants and the victim were in the business of selling drugs. Believing that Cordero had stolen jewelry, drugs, money, and a handgun from them, they decided to kill him and secure the return of their belongings.

Lopez, Rosario, and Mejia drove [defendant]'s car from the rendezvous point to Cordero's apartment. Torres, the victim's acquaintance, was sitting in the victim's car parked in front of the victim's home when the group arrived. Rosario carried a 9 mm semi-automatic handgun; Mejia a .357 caliber revolver; Lopez a .38 caliber revolver. They forced Torres to exit the vehicle at gunpoint and to open the door to the apartment. Once inside, they ordered Torres and the victim, along with two other men—Wallington Mosquera and Eduardo Ramos—to stand against a wall. As the co-defendants searched the occupants, a struggle broke out during which Rosario ordered Mejia to shoot the victim in the foot. Lopez then shot Cordero several times, and Rosario shot Cordero in the head.

The men then called [defendant] to pick them up in a taxi. Rosario and Mejia eventually fled the country. [Defendant] asked her sister to get Rosario's passport from his apartment and send it in a taxi; [defendant] transferred $200 to the men via Western Union. [Defendant] kept the weapons, intending to send them to the Dominican Republic. Rosario and Mejia were

3

eventually arrested in Mexico and extradited—causing the years-long delay in the scheduling of the trial.

    . . . .

Mejia testified at trial in line with his earlier statements that he, the co-defendants, and the victim, were involved in drug distribution. The issue of their involvement in an ongoing drug distribution scheme had been the subject of Rule 104 hearings. The trial judge determined, after applying the standards for admission under N.J.R.E. 403 and 404(b), that the testimony would be admitted as establishing motive.

At trial, Mejia referred to Rosario as "the boss" of the drug enterprise, which he had not done earlier. Although the judge did not specifically rule on whether Mejia could testify about Rosario's role in the group, he did in general terms decide he would allow Mejia to fully explain his own relationship with the others and the group's relationship with the victim, namely, that they were all involved in the drug trade and had access to weapons.

Several days after the murder, Mosquera and Ramos, the two men who were stood against the wall at gunpoint during the incident, provided statements. Mosquera initially claimed he did not know who shot the victim, but later that night, after speaking to officers off the record, he made a second statement in which he named Rosario as one of the shooters, but claimed not to know the names of the others. The officer who testified was not the officer who spoke to Mosquera off the record, although she had been in the area. She was present during the recorded interviews. Mosquera's statement implicating Rosario was introduced at trial. [Id., slip op. at 3-7.]

4

Defendant was sentenced to seventeen years with an eighty-five percent parole ineligibility and five years of parole supervision. She appealed her conviction and sentence, which we affirmed. Id., slip. op. at 1. Defendant's petition for certification was denied. State v. Hildalgo-Bautista, 249 N.J. 62 (2021).

Defendant filed a PCR petition on June 16, 2022 and asserted several factual bases of IAC which we limit to those raised in this appeal. She claimed trial counsel: (1) failed to advise her of her right to testify or failed to comply with her wishes to testify; (2) failed to request the trial court provide a spoliation instruction to the jury; and (3) failed to conduct a pretrial interview of Rosario and Mejia.

Prior to the PCR court's denial of defendant's petition, it had previously denied defendant's motion for discovery requesting the following information:

> A) A copy of the September 25, 2013 recorded Adames/Cordero interview or if the recording cannot be located a certified sworn statement as to the recording's present status and whether the recording was available to provide to the defense before and during petitioner's criminal trial.
>
> B) All traffic tickets issued by the Plainfield Police Department against Rodney Rosario and any vehicle registered in his name for the period September through November 2013, inclusive.

C) Any and all police reports, correspondence, notes, memorandum, text messages, and recordings related to all stops and searches of Rodney Rosario's vehicle(s) for the period of September through November 2013, inclusive.

D) Any and all internal investigation reports, correspondence and memorandum related to Rodney Rosario 's allegation that a copy of the recording of the Adames/Cordero September 25, 2013 interview with the Plainfield Police Department was provided to Rodney Rosario by his girlfriend "Nini" which in turn had been provided to her by a member of the Plainfield Police Department.

On appeal, defendant challenges the orders denying defendant's request for discovery and her PCR petition raising the following points:

POINT I

DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING WHERE SHE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL IN THE FAILURE OF TRIAL COUNSEL TO ADVISE HER CONCERNING HER RIGHT TO TESTIFY OR FAILED TO COMPLY WITH HER WISHES TO TESTIFY.

POINT II

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST THAT THE TRIAL COURT GIVE A SPOLIATION INSTRUCTION TO THE JURY.

6

POINT III

APPELLATE COUNSEL WAS INEFFECTIVE IN
FAILING TO RAISE THE ISSUE THAT THE TRIAL
COURT FAILED TO GIVE A SPOLIATION
INSTRUCTION TO THE JURY ON DIRECT
APPEAL AS PLAIN ERROR.

POINT IV

[] DEFENDANT WAS ENTITLED TO AN
EVIDENTIARY HEARING BECAUSE SHE
ESTABLISHED THAT TRIAL COUNSEL WAS
INEFFECTIVE IN FAILING TO CONDUCT
PRETRIAL INTERVIEWS OF ADAMES AND
GARCIA.

POINT V

THE TRIAL COURT'S DENIAL OF HER MOTION
TO COMPEL DISCOVERY WAS IN ERROR AND
MUST BE REVERSED AND REMANDED FOR AN
ORDER THAT THE STATE PRODUCE THE
STATEMENT OF VICTIM CORDERO.

II.

"[PCR] is New Jersey's analogue to the federal writ of habeas corpus."

State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J.

451, 459 (1992)). "[PCR] provide[s] a built-in 'safeguard that ensures that a

defendant [is] not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013)

(quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). When a PCR court does

not conduct an evidentiary hearing, we review the denial of a PCR petition de

novo.  State v. Harris, 181 N.J. 391, 420-21 (2004); State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020).

To establish a claim of ineffective assistance of counsel (IAC), a defendant must satisfy the two-prong Strickland[1] test:  (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense."  Strickland at 687;  State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey).

A petitioner is not automatically entitled to an evidentiary hearing.  State v. Porter, 216 N.J. 343, 355 (2013).  Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing on a PCR petition only if they establish a prima facie case in support of PCR, material issues of disputed fact cannot be resolved by reference to the existing record, and an evidentiary hearing is necessary to resolve the claims for relief.  Id. at 354 (quoting R. 3:22-10(b)).

III.

A.

Initially, we address defendant's argument that trial counsel was ineffective by failing to explain the benefits and drawbacks of testifying on her

---

[1]  Strickland v. Washington, 466 U.S. 668 (1984).

A-0536-23

own behalf at trial. Defendant admits she answered "yes" to the court's question "[if] there [was] anything that you have asked your attorney to do that your attorney has not done up until this point in the case?" She, however, claims her "yes" answer exhibited that her attorney did not adequately inform her of her right to testify at trial. We disagree because our review of the record discloses that defendant's merits brief fails to accurately include the full colloquy between her and the judge.

The colloquy between the judge and defendant follows.

| | |
|---|---|
| THE COURT: | Very good. Is there anything that you have asked your attorney to do that your attorney has not done up until this point in the case? Mr. Rosario? |
| DEFENDANT ROSARIO: | Everything is fine. |
| THE COURT: | Mr. Lopez? |
| DEFENDANT LOPEZ: | Everything is fine. |
| THE COURT: | Everything is fine? |
| DEFENDANT HIDALGO-BAUTISTA: | Yes. |

9

[(Emphasis added).][2]

Defendant's brief omitted the judge's direct intervening question asking her if "Everything is fine?" as well as both co-defendants answers to the same question from the judge. Our plain meaning interpretation of defendant's answer of "yes" was clearly to the latter question, which had been answered in the same fashion by the two co-defendants prior to her answer. The unedited transcript in the record reflects defendant's answer was not a direct response to the original question but was answering the judge's intervening question confirming that "everything was fine" with her—related to the judge's first question as to whether her trial counsel did everything he was asked. The PCR judge's findings concerning this issue were an accurate reflection of defendant's answers during the trial. The actual record shows defendant was fully aware of her right to testify at trial and that she voluntarily and knowingly made a decision not to testify.

We conclude counsel was not ineffective for failing to inform defendant of her right to testify because the record clearly reflects her colloquy with the PCR judge confirming she was aware of her right to testify. In addition, under

---

[2] Emphasis was added to the portion of the colloquy between defendant and the trial court which was omitted in defendant's merits brief.

these circumstances even if counsel was deficient regarding this issue, there was no prejudice to defendant because the PCR judge adequately addressed her right to testify.

Additionally, we conclude defendant has made bald assertions that trial counsel did not honor her "wishes to testify" because she failed to submit any admissible evidence by way of a sworn certification stating such and instead relied upon her counsel's certification to support her allegations. A defendant "must do more than make bald assertions that [they were] denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). PCR counsel's certification and arguments are not evidence because counsel had no personal knowledge of the facts surrounding her desire to testify or any communications with trial counsel regarding this testimony. See R. 1:6-6. Therefore, the PCR judge's denial of her petition on this claim was not error.

B.

We now address defendant's assertion that she was entitled to PCR because she was "denied due process and equal protection rights to a fair trial" due to counsel's failure to "request proper jury instructions." Specifically, defendant asserts trial counsel was ineffective for failing to request a "spoliation

instruction" concerning the alleged loss of Cordero's recorded statement by law enforcement.

Our Supreme Court has defined the adverse inference charge in the criminal context to be

> analogous to the spoliation inference which may be drawn when evidence has been concealed or destroyed in civil cases. The spoliation inference[,] like the adverse[ ]inference charge[,] allows a jury in the underlying case to presume that the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to [them].
>
> [State v. Dabas, 215 N.J. 114, 140 n.12 (2013) (internal citation and quotation marks omitted).]

Defendant argues trial counsel was ineffective for failing to request an adverse inference instruction because Cordero's alleged recorded statement was destroyed. However, as the PCR judge noted, pursuant to his order issued in co-defendant Lopez's PCR proceeding, the State had produced a certification of Lieutenant Nuno Carvalho indicating that a search of the department's records was conducted and the alleged recorded statements were not found. Based upon this certification, the PCR judge found that it had "no reliable reason to believe that the evidence referenced by [defendant] exists." The court's finding is further supported by the police reports issued at the time of Cordero's meeting with police, noting that when Cordero spoke with detectives, he "advised that

12

he was willing to assist [police], but would not go on the record about the threats to kill Adames and himself, or about the weapons and narcotic activity." Accordingly, the court's determination that a recording of Cordero's statement did not exist was amply supported by the record. We conclude there was no bad faith or constitutional violation, and trial counsel was not deficient in failing to request an adverse inference charge under Strickland's first prong.

We further conclude defendant also failed to sustain her burden under Strickland's prejudice prong because she did not present any competent evidence to establish how Cordero's recorded statement would have overturned her conviction. Strickland, 466 U.S. at 694. Indeed, the PCR judge noted that although defendant claimed that the statements may have supported the argument that her co-defendants may have killed Cordero because he was a police informant, defendant fails to establish how this information would have helped her defense.

We now address defendant's similar assertion raised for the first time on appeal that appellate counsel was also ineffective for failing to raise trial counsel's failure to request a spoliation instruction. The right to effective assistance of counsel extends to appellate counsel on direct appeal. State v. O'Neil, 219 N.J. 598, 610-11 (2014). "A first appeal as of right . . . is not

adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." Evitts v. Lucey, 469 U.S. 387, 396 (1985). As such, claims of ineffective assistance of counsel on appeal are examined under the Strickland standard. State v. Guzman, 313 N.J. Super. 363, 374 (App. Div. 1998).

Appellate counsel is under no obligation to raise an issue that lacks merit. See generally State v. O'Neal, 190 N.J. 601, 619 (2007) (holding "[i]t is not ineffective assistance of counsel for defense counsel not to file a meritless motion"); State v. Worlock, 117 N.J. 596, 625 (1990) ("[t]he failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel."); State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987) (citing Jones v. Barnes, 463 U.S. 745 (1983)) (explaining "appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by the defendant").

Applying the Strickland test, we conclude the PCR judge did not err by finding defendant's appellate counsel did not provide ineffective representation by failing to contend trial counsel was ineffective by not requesting an adverse interest instruction. Since we have previously determined trial counsel was not ineffective nor was defendant prejudiced surrounding counsel's failure to

14

request this charge, it follows that appellate counsel was not ineffective for not raising this argument.

Because we have concluded trial and appellate counsels' failure to raise the adverse inference spoliation instruction was not IAC, clearly it was not capable of producing an unjust result under the heightened plain error standard. See R. 2:10-2; see also State v. Williams, 168 N.J. 323, 336 (2001) (quoting State v. Macon, 57 N.J. 325, 336 (1971)) (holding a reversal based on plain error requires us to find that the error likely led to an unjust result that is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.")

C.

Defendant next contends that trial counsel was ineffective for failing to investigate and present the exculpatory testimony of Adames and Garcia. Defendant argues that their recorded interviews given to the Plainfield Police Department would have supported her defense that Lopez and Rosario, along with co-conspirator Mejia, killed Cordero because of his role as a police informant. She asserts this defense was essential to challenging the charges, particularly the conspiracy to commit murder. Defendant also argues that trial

counsel failed to cross-examine Mejia effectively regarding his prior death threats to the victim.

Defendant contends contrary to the PCR judge's ruling she was entitled to an evidentiary hearing because she established a prima facie case of ineffective assistance of counsel. Defendant claims that trial counsel's failure to investigate and present testimony from Adames and Garcia was not a reasonable tactical decision and that such a failure is generally viewed as deficient performance under <u>Strickland</u>, as it deprived defendant of critical evidence that could have altered the trial's outcome. Thus, defendant contends the PCR judge's denial of an evidentiary hearing should be reversed, and the matter remanded for further proceedings.

In assessing whether additional witnesses are sufficient to satisfy <u>Strickland</u>, "we are guided, in part, by the standard applicable to claims of newly discovered evidence, that is, 'that the evidence' would probably change the jury's verdict if a new trial were granted." <u>Gideon</u>, 244 N.J. at 552 (quoting <u>Allegro</u>, 193 N.J. at 370). Further, the Supreme Court has expressly "recognize[d] that '[d]etermining which witnesses to call is one of the most difficult strategic decisions that any trial attorney must confront.'" <u>State v. Pierre</u>, 223 N.J. 560, 579 (2015) (quoting <u>State v. Arthur</u>, 184 N.J. 307, 320 (2005)). Accordingly,

16

our "review of such a decision should be 'highly deferential.'"  Arthur, 184 N.J. at 321 (quoting Strickland, 466 U.S. at 689).

Moreover, there is a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  Given that presumption, "complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy of representation by counsel."  Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Echols, 199 N.J. 344, 357-59 (2009).

Therefore, "[t]o rebut that presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'"  State v. Chew, 179 N.J. 186, 203 (2004) (quoting Strickland, 466 U.S. at 689).  "In evaluating a defendant's claim, the court 'must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of the attorney's conduct.'"  Ibid. (quoting Strickland, 466 U.S. at 690).

We conclude under this "highly deferential" viewpoint, defendant failed to establish either prong of Strickland based on trial counsel's failure to call Adames or Garcia as witnesses.  We determine, as did Judge Deitch, that these witnesses likely would damage any defense proffered by defendant and

17

negatively affect her case, and it was a reasonable strategic choice by trial counsel not to present them as witnesses. As the judge noted, it was highly questionable whether both witnesses' statements were exculpatory.

In addition, her defense rested on different reasons for the killing of Cordero, which the judge found did not change the fact that defendant participated as a co-conspirator. We conclude informing the jury that co-defendants Rosario and Mejia had previously threatened the victim arguably would have supported the State's argument that defendants planned to kill the victim well in advance of the actual murder and that this was not a spontaneous killing. Moreover, Adames and Garcia's testimony would have corroborated co-defendant Mejia's testimony that prior to the murder, the victim sold drugs with defendant and co-defendants.

We discern no error with the judge's finding that defendant provided only bald assertions that these witnesses would have yielded competent evidence supporting a defense. See Porter, 216 N.J. at 355. We conclude defendant's conclusory assertions simply do not satisfy defendant's burden of presenting competent evidence supporting her claim trial counsel was ineffective by failing to present these witnesses under both prongs of Strickland.

18

D.

We now turn to defendant's argument that the PCR judge erred by not granting an evidentiary hearing. An evidentiary hearing should be granted when a defendant is able to prove a prima facie case of ineffective assistance of counsel. Preciose, 129 N.J. at 462; R. 3:22-10(b). "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. at 462–63. To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland test. Id. at 463. Lastly, even "view[ing] the facts in the light most favorable to . . . defendant" she failed to "present[ ] a prima facie claim in support of [PCR]." Preciose, 129 N.J. at 462-63.

Judge Deitch did not err in concluding that an evidentiary hearing was not warranted for defendant's claims of ineffective assistance of counsel. Even viewing defendant's factual assertions in the light most favorable to her, defendant has failed to present any disputed facts outside the record which satisfy a prima facie case of IAC to warrant an evidentiary hearing.

IV.

Finally, we turn to defendant's argument that the PCR judge erred by denying her discovery request for the State to produce an alleged video

19

recording of Cordero's statement to the Plainfield Police Department, as well as any notes taken in connection with his interview. We are not persuaded.

"[P]ost-verdict discovery requests fall within the discretion of the trial court . . . ." State v. Szemple, 247 N.J. 82, 97 (2021). "Thus, an appellate court should generally defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'" State in Int. of A.B., 219 N.J. 542, 554 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)); see generally Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (explaining that "abuse of discretion arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985))).

In that regard, "where a defendant presents the PCR court with good cause to order the State to supply the defendant with discovery that is relevant to the defendant's case and not privileged, the court has the discretionary authority to grant relief." State v. Marshall, 148 N.J. 89, 270 (1997). However, "in recognition of the importance of finality," Szemple, 247 N.J. at 97, "only in the

20

unusual case will a PCR court invoke its inherent right to compel discovery," Marshall, 148 N.J. at 270.

"[O]ur Court Rules concerning petitions for PCR do not contain any provision authorizing discovery in PCR proceedings," Marshall, 148 N.J. at 268 (citations omitted) (first citing R. 3:22-1 to -12; and then citing R. 3:13-2 to -4) and "the general discovery obligations contained in the Rules Governing Criminal Practice do not extend to post-conviction proceedings." Ibid.

The judge determined there was no credible evidence that the video existed primarily based on the unrefuted certification of Lt. Carvalho that the video did not exist and could not be located. The judge further found that even if the video existed it would not have led to a different trial outcome—as the information would not have exonerated defendant or proven that the murder was based on Cordero's status as an informant rather than motivated by theft. We conclude Judge Deitch's analysis was based on credible and substantial evidence in the record and was clearly not an abuse of discretion.

To the extent we have not specifically addressed any of defendant's remaining legal arguments, we conclude they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0536-23