**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3597-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DURRELL HEARD, a/k/a
DURRELL A. HEARN,

    Defendant-Appellant.

_____

Submitted May 7, 2025 – Decided August 5, 2025

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-08-1935.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the Law Division's April 12, 2023 order denying his application for post-conviction relief (PCR) without an evidentiary hearing. Defendant claims both his trial and appellate counsel deprived him of the effective assistance of counsel. Specifically, he asserts: his trial counsel failed to adequately highlight to the jury inconsistencies in a witness's identification of him and provided insufficient advice regarding his right to testify and claims; his appellate counsel failed to challenge the trial court's denial of his motion for acquittal; and the PCR court erred by failing to consider claims asserted in a prior petition. We have carefully considered defendant's arguments under controlling legal principles, and we affirm.

I.

We derive the following relevant facts and procedural history from the record and our decision on direct appeal. See State v. Heard, No. A-4003-17 (App. Div. Jan. 13, 2021) (slip op. at 1).

A.

In 2017, defendant was convicted after a jury trial of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2; three counts of first-degree robbery, N.J.S.A. 2C:15-1; first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree unlicensed

2

possession of a firearm, N.J.S.A. 2C:39-5(b); and second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a). See Heard, slip op. at 2, 12. Defendant's convictions resulted from a daytime robbery in a restaurant on January 8, 2015 when defendant and his co-defendant, Leon Trent, "robbed several individuals—Tyreese Barkley, Jahod Onque, and Tykwan Crenshaw— and defendant shot and killed Crenshaw." Id. at 2-3.

Numerous witnesses to the shooting testified at trial, including Trent, Barkley, Onque, and Hasim Salimi, a worker at the restaurant. See id. at 10-11. Onque and Barkley recalled standing with Crenshaw by the door inside the restaurant when they observed defendant enter holding a gun. According to Onque, defendant announced, "[T]his is a shake." Barkley testified that defendant stated, "Y'all already know what time it is."

Onque explained he originally attempted to give defendant two dollars, but defendant replied, "I know this ain't all your bread." Barkley described defendant "waving [the gun]" "back and forth" as he demanded money. Onque then gave defendant $100, and Barkley gave Trent $50. Onque testified defendant then said to Crenshaw, "[Y]ou robbed my n[*****]" and Crenshaw responded, "[N]ah, I ain't with that s[***]." Trent stood outside "in front of the

door guarding" the restaurant when defendant entered, and, at some point, "opened the door," entered, and "told [defendant] to hurry up."

Onque and Barkley both testified they were standing with Crenshaw when defendant shot Crenshaw twice. Salimi was in the back of the restaurant at the time of the shooting when he heard Crenshaw say, "Na, na, na," followed by two gunshots. Although Salimi did not witness the first shot, he was standing five feet away when he saw defendant shoot Crenshaw the second time. Defendant and Trent then ran from the restaurant.

Trent, after pleading guilty to conspiracy to commit the robbery and robbery, testified that he and defendant, his cousin, "planned to rob the restaurant." Id. at 11. He testified he was "the lookout," and he identified defendant "as the shooter." Ibid. He fled the scene after seeing defendant shoot Crenshaw. Barclay and Salimi gave descriptions of defendant to police on the day of the shooting, and each separately identified defendant from still photographs taken from surveillance footage and subsequently from photo arrays. They identified defendant at trial, as did Onque.

Onque testified he "was standing three feet from defendant at the time of the robbery and right next to Crenshaw when defendant shot Crenshaw." Id. at 10. He explained that police questioned him the day after the shooting and he

provided a description of defendant, but admitted he never mentioned at that time that the shooter had missing teeth. Approximately one month later, Onque "described the shooter [to police] as having dreadlocks, wearing a hoodie and jeans, and missing about four front teeth." Ibid. When questioned at trial about his identification of defendant from a photo array, "Onque stated he was 'positive' defendant was the one who shot Crenshaw." Ibid. "At trial, defendant displayed his teeth for the jury," revealing his "missing or rotted top teeth." Ibid.

Defendant's trial counsel questioned Onque regarding inconsistencies in his two statements, and asked Onque whether he described the shooter's missing teeth in his first interview. When Onque replied, "[N]o," counsel asked about the subsequent statement, and Onque recalled describing the shooter as having "missing teeth."

Defendant did not testify. In a colloquy with trial counsel and the trial court, defendant represented that he discussed with counsel "whether or not [defendant] want[ed] to testify in this case," and, "without any pressure[ or] any undue influence," defendant freely and voluntarily waived his right. Defendant expressly stated, "[Trial counsel] just told me it's my choice," but he "d[id not] suggest that [defendant] testify." The court questioned defendant at length and confirmed defendant understood he "g[o]t to make the final decision."

A-3597-22

Defendant's counsel highlighted in his summation Onque's testimony that he did not describe defendant's missing teeth when he gave his first statement on January 9, but "[a]lmost five weeks later, . . . [Onque] comes in and he's very specific about the four missing teeth."

After the jury found defendant guilty on all counts, the court imposed an aggregate sentence of eighty-five years' incarceration with an eighty-five percent term of parole ineligibility subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Id. at 12. We affirmed both the conviction and sentence, noting the evidence against defendant was "overwhelming." Id. at 28.

B.

Defendant initially filed a self-represented verified petition for PCR in April 2021 in which he enumerated six claims for relief, each alleging ineffective assistance of trial counsel. Without any further detail, defendant claimed trial counsel "failed to": "properly negotiate a plea offer"; " advise [him] of [his] sentencing exposure"; "investigate exculpatory witnesses"; "conduct an independent investigation"; "suppress robbery and felony murder charges"; and "properly challenge the identification evidence." This petition was later dismissed without prejudice.

Thereafter, in 2022, PCR counsel was assigned and filed an amended verified petition, accompanied by a "supplemental certification" from defendant in support of his petition, asserting ineffective assistance of both trial and appellate counsel. The supplemental certification claimed "[t]rial counsel gave [defendant] misinformation and ill advice about [his] right to testify in [his] own defense at trial," explaining that he "told [his] attorney" he "wanted to testify" at trial "to tell the jury that [he] was innocent." Defendant stated he "was outside of the restaurant when the shooting took place" and was the individual in the surveillance video, and he asserted he "did not have a gun in [his] possession." He claimed that "whenever [he] asked about taking the stand[,] [his] attorney would tell [him] that [he] should not testify," but trial counsel "never explained to [him] what type of questions [he] would be asked or how cross[-]examination would happen."

PCR counsel argued in his brief and at oral argument that defendant was entitled to a hearing as he had presented prima facie evidence that trial counsel ineffectively advised him regarding his right to testify. He asserted that trial counsel was also "ineffective in failing to properly impeach the credibility of . . . Onque," regarding his failing to note the shooter's missing teeth in his first description. He argued that appellate counsel "fail[ed] to argue on appeal

7

that the verdict was against the weight of the evidence." He asserted that "[r]easonably competent [a]ppellate counsel would have pointed to the conflicting testimony from the witnesses," specifically, that "Salimi and Barkley only identified [d]efendant after they had been shown a photo of [d]efendant." PCR counsel's brief stated defendant "also asserts all the claims and arguments contained in his original pro se petition and any other supporting arguments submitted to the court."

The State argued (1) defendant's counsel raised the inconsistency in Onque's statements regarding the shooter's appearance to the jury; (2) the record demonstrated defendant's knowing and voluntary decision not to testify at trial, which was sound trial strategy; (3) the argument that appellate counsel was ineffective was contrary to this court's decision on direct appeal; and (4) defendant's claims raised in his self-represented petition for PCR were too vague, conclusory, or speculative to warrant an evidentiary hearing.

On April 12, 2023, the PCR court denied defendant's PCR petition. In its thorough well-reasoned written decision, the court found defendant failed to make a sufficient showing to warrant a hearing. The court discussed the record and applicable law and determined: (1) trial counsel highlighted to the jury Onque's failure to mention the shooter's missing teeth in his first interview; (2)

"[t]he weight of the evidence against [defendant] was 'overwhelming' and trial counsel clearly exercised his competent and professional judgment in advising his client against testifying"; and (3) appellate counsel was not required to advance every possible argument, noting our decision on direct appeal finding the evidence "overwhelming." The court also acknowledged the State's assertion that defendant's "remaining pro se claims are too vague, conclusory, or speculative to warrant an evidentiary hearing," but "[i]n sum, [it did] not find that any of the claimed deficiencies amount to ineffective assistance of counsel."

## II.

On appeal, defendant argues:

POINT ONE

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIMS THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY IMPROPERLY IMPEACHING THE CREDIBILITY OF THE STATE'S WITNESS JAHOD ONQUE AND IMPROPERLY PRESSURING [DEFENDANT] NOT TO TESTIFY; HE IS ALSO ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO ARGUE ON APPEAL THAT THE COURT IMPROPERLY DENIED [DEFENDANT]'S MOTION FOR A JUDGMENT OF ACQUITTAL AND THAT THE VERDICT WAS NOT SUPPORTED BY THE EVIDENCE.

A-3597-22

THIS MATTER MUST BE REMANDED FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW ON [DEFENDANT]'S PRO SE CLAIMS.

A.

Well-settled legal principles govern our review. We review a PCR court's legal conclusions de novo. See State v. Harris, 181 N.J. 391, 415 (2004). Likewise, without an evidentiary hearing, this court "may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (quoting State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014)).

New Jersey's PCR petition serves as an "analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, entitlement to the requested relief. See ibid. To sustain this burden, a defendant must articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient

performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

Importantly, this court's review of counsel's performance under the first Strickland requirement "must be highly deferential," and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," requiring defendants to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Under Strickland's second requirement, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if . . . [it] had no effect on the judgment." Id. at 691. Errors with "some conceivable effect on the outcome" fall short of warranting relief. Id. at 693.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing as defendants "must allege specific facts and evidence supporting [their] allegations." State v. Porter, 216 N.J. 343, 355 (2013). "[B]ald assertions" will not suffice. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(c) mandates that factual claims "must" be made under oath, "by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." Further, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997).

B.

Against this backdrop we conclude defendant's claims lack merit and were insufficient to warrant an evidentiary hearing.

First, we address and reject defendant's claim that he demonstrated trial counsel failed to effectively cross-examine Onque concerning his failure to mention the shooter's missing top teeth in his first statement to police or emphasize the inconsistency to the jury. As the PCR court recognized, defense counsel squarely elicited from Onque on cross-examination an admission that

12

he never told police in his first interview that the shooter's teeth were missing by contrast to that revelation of that distinctive characteristic in his second statement approximately one month later. Counsel then highlighted the inconsistency in his closing argument. We discern no deficiency in trial counsel's performance on this issue to warrant a hearing, and certainly no arguable prejudice given the abundant evidence of guilt.

We likewise conclude defendant established neither deficient performance by trial counsel nor resulting prejudice regarding his claims that trial counsel failed to properly advise him regarding his right to testify. We are satisfied, as was the PCR court, that the record undermines defendant's contentions. Both defendant's trial counsel and the trial court questioned defendant thoroughly regarding defendant's understanding of his right to testify, and his waiver of that right. Defendant repeatedly acknowledged his understanding that the decision whether to testify was his to make, and that he made the decision after receiving counsel's advice. We further perceive no deficient advice in trial counsel's recommending against defendant's testifying, particularly considering defendant's claims that he wanted to explain that he was present at the time of the shooting, but outside the restaurant. Given the eyewitness testimony to the contrary, including that of his cousin and co-

A-3597-22

conspirator, as well as from a restaurant employee, counsel's advice did not exceed the bounds of sound strategy.

Next, we address defendant's claim that appellate counsel was ineffective for failing to challenge the trial court's decision denying defendant's motion for a judgment of acquittal. We need not again list at length the strong evidence of defendant's guilt, which, we already characterized as "overwhelming." Heard, slip op. at 28. Counsel is not ineffective for failing to raise meritless claims or defenses. See State v. O'Neal, 190 N.J. 601, 619 (2007). We are satisfied defendant failed to make even a preliminary showing that counsel's representation fell below the threshold of effective advocacy. See State v. Morrison, 215 N.J. Super. 540, 548-49 (App. Div. 1987) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)) ("[A]ppellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant.").

Lastly, we reject defendant's claim that the matter should "be remanded for findings of fact and conclusions of law on [his] pro se claims." The PCR court correctly determined that defendant made no showing that "the claimed deficiencies amount[ed] to ineffective assistance of counsel." Defendant offered no facts or details before the PCR court, or here, beyond bald assertions of trial

counsel's alleged deficiencies.  His claims lack merit, and his PCR petition was properly denied.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division